IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

- - - - - - - - - - - - - - - - - - -

UNITED STATES OF AMERICA )

v. ) CRIMINAL ACTION NO. 2:25cr122

LETITIA A. JAMES, )

Defendant. )

- - - - - - - - - - - - - - - - - - -

TRANSCRIPT OF PROCEEDINGS

**(Initial Appearance/Arraignment)**

Norfolk, Virginia

October 24, 2025

BEFORE: THE HONORABLE JAMAR K. WALKER
United States District Judge

APPEARANCES:

UNITED STATES ATTORNEY'S OFFICE
By: Lindsey Halligan
United States Attorney
- and -
Amanda Cheney
Roger Keller
Assistant United States Attorneys
Counsel for the United States

APPEARANCES: (Continued)

BAUGHMAN KROUP BOSSE PLLC
By: Andrew C. Bosse
- and -
LOWELL & ASSOCIATES, PLLC
By: Abbe D. Lowell
David A. Kolansky
Isabella M. Oishi
Counsel for the Defendant

(Proceedings commenced at 11:01 a.m.)

THE DEPUTY CLERK: United States of America versus Letitia A. James, in Criminal Action 2:25cr122.

Ms. Cheney, Mr. Keller, is the government ready to proceed?

MR. KELLER: Yes, we are.

MS. CHENEY: Good morning, Your Honor.

THE COURT: Good morning.

MS. CHENEY: Your Honor, may I take this opportunity to introduce to the Court my colleague, Roger Keller. He's an Assistant United States Attorney from the Eastern District of Missouri. Mr. Keller is a 1992 graduate of St. Louis University School of Law, and he's been with the United States Attorney's Office since 2003. Mr. Keller will be representing the United States in this matter.

I'd also like to advise the Court that Lindsey Halligan, the United States Attorney for the Eastern District of Virginia, is present at counsel table.

THE COURT: Good morning to you all, and thank you for the introduction, Ms. Cheney.

MS. CHENEY: Thank you, Your Honor.

MR. KELLER: Good morning, Your Honor.

THE COURT: Good morning.

THE DEPUTY CLERK: Mr. Lowell, is the defendant ready to proceed?

MR. LOWELL: We are. Your Honor, here or at the podium?

THE COURT: For introductions, there is all right.

MR. LOWELL: Thank you. Yes, I am Abbe Lowell, defense counsel for Attorney General Letitia James. With me is Andrew Bosse, our counsel here in Virginia. Behind me are my colleagues, David Kolansky and Isabella Oishi. Nice to see you all.

THE COURT: Good morning to you all as well.

Before we proceed, I want to remind everyone that cell phones and smartwatches are not permitted to be powered on during this proceeding, and anyone who fails to comply with this rule will be subject to sanctions by the Court.

We are here today for an arraignment, but because this is Ms. James's first appearance in court, we will first conduct the initial appearance pursuant to Rule 5 of the Federal Rules of Criminal Procedure.

Ms. James, if you could please come forward to the podium with your counsel.

Good morning to you as well.

THE DEFENDANT: Good morning.

THE COURT: Ms. James, as this is your first appearance in the United States District Court for the Eastern District of Virginia, the Court wants to advise you of certain rights that you have.

You have the right to remain silent. Anything you say, except privately to your own attorneys, may be used against you. Do you understand that right?

THE DEFENDANT: Yes, Judge.

THE COURT: Do you also understand that you have the right to an attorney in this case?

THE DEFENDANT: Yes, Judge.

THE COURT: Now, the Court understands that you've retained counsel and that your counsel is present with you here in court today, but if you could not afford an attorney, you have the right to have an attorney appointed to represent you. So do you understand that you have the right to an attorney during all stages of your case?

THE DEFENDANT: Yes, Judge.

THE COURT: An indictment has been returned against you which charges you with two counts: Count One charges you with bank fraud, in violation of Title 18, United States Code, Section 1344; and Count Two charges you with false statements to a financial institution, in violation of Title 18, United States Code, Section 1014.

The maximum penalties for each offense are a 30-year term of imprisonment, a fine of $1 million or twice the gross gain or loss, full restitution and forfeiture, a $100 special assessment, and up to five years of supervised release.

Do you understand that those are the charges against

you and the maximum penalties that you could face?

THE DEFENDANT: Yes, Judge.

THE COURT: All right. Thank you. You may be seated.

THE DEFENDANT: Thank you.

THE COURT: All right. Let's proceed now to the arraignment.

Mr. Lowell, have you received a copy of the indictment in this case?

MR. LOWELL: We have, Your Honor.

THE COURT: And have you had an opportunity to review it with your client?

MR. LOWELL: We have done that.

THE COURT: And does Ms. James wish to waive formal reading of the indictment?

MR. LOWELL: She waives the reading.

THE COURT: And does Ms. James wish to plead not guilty and to request a jury trial?

MR. LOWELL: I would like Ms. James to enter her plea herself, please.

THE DEFENDANT: Not guilty, Judge, to both counts.

THE COURT: All right. Thank you.

The Court has calculated the speedy trial deadline as January 2nd, 2026. Do the parties agree?

MR. KELLER: Yes, Your Honor.

MR. LOWELL: We agree that that is the normal speedy trial calculation of January 2nd, we do.

THE COURT: All right. Do the parties wish to have this matter tried within the Speedy Trial Act deadline?

MR. LOWELL: I think I would ask the Judge to understand that that might be a question that's a few moments premature in the following way.

THE COURT: Can you come to the podium for this, Mr. Lowell? Thank you.

MR. LOWELL: Sure.

We want the speediest trial we could possibly get. What we don't know are the following: Until yesterday, we didn't know who counsel for the government was; I don't know when the discovery will be; I'd like to have the Court institute some sort of schedule for the motions.

These are not going to be simple run-of-the-mill motions. I am sure the Court can address them within whatever time frame we want, whatever you want, but I think at this point, I think what we're going to say is that between the discovery and motions practice, including one motion that we understand will have to be transferred to a different judge or a different district, I suspect what we're going to ask for is a ruling that says that there are both the interests of justice and complicated cases to postpone it a bit. And by "a bit," I do mean a bit.

I think January 2nd is probably unrealistic. Sometime in January seems very realistic, depending on the Court's schedule, for addressing the matters that I just said. So how would you like to proceed? We can at this moment say we'd ask the Court to enter some decision about taking it out of the immediate 70 days, or we can wait until we get to the schedule of motions and discovery and do it then. How would you like to proceed?

THE COURT: I would prefer to set the trial date and work backwards from the trial date. So it sounds to me that what you are saying is that you're requesting a date that is outside of the speedy trial date but not far outside of the speedy trial date; is that accurate?

MR. LOWELL: You said it better than I did.

THE COURT: All right. Mr. Keller, what is the government's perspective?

MR. KELLER: Your Honor, so long as the defendant would waive speedy trial, I believe that's doable, because I don't want an issue later on that we have a failure to waive speedy trial. So if we have a waiver here today, I believe we can work something like that out.

THE COURT: Ms. James doesn't need to waive speedy trial *per se*. The Court can make a finding under 18 U.S.C. Section 3161(h) that the matter should be set outside of the Speedy Trial Act, and the Court is comfortable with doing

that based upon the representations that Mr. Lowell has made about the need to review discovery and the need to file additional motions, so the Court will just orally make that finding and set the matter outside the speedy trial based upon that.

MR. KELLER: With that finding, Judge, the United States is fine with that.

THE COURT: All right. So the Court has considered the factors outlined in the Speedy Trial Act and balanced the request to set trial slightly outside of the time set by the Act against the best interests of the public and the defendant in a speedy trial.

The Court finds that the ends of justice served by setting a trial date beyond the 70-day deadline outweigh the best interests of the public and the defendant in a speedy trial.

Specifically, the Court finds that setting this matter outside the Speedy Trial Act deadline would afford counsel for the defendant and the government the reasonable time necessary for effective preparation, taking into account the exercise of due diligence pursuant to 18 U.S.C. Section 3161(h)(7)(B)(iv).

Any period of delay resulting from this order shall be excluded from the speedy trial computation pursuant to 18 U.S.C. Section 3161(h)(7)(A).

Thank you, Mr. Lowell.

MR. LOWELL: Thank you, Your Honor.

THE COURT: Mr. Keller, how long does the government anticipate a trial would last in this case?

MR. KELLER: Your Honor, the government believes it would take -- it would be approximately two weeks to try this matter. No more than two weeks.

THE COURT: Why?

MR. KELLER: The documents and the potential witnesses who would have to testify. I'm going through the discovery right now, Judge, so I wanted to give you the outermost possibility where I believe it would take.

THE COURT: Understand I'm not going to hold you to this at trial, but approximately how many witnesses would you anticipate calling?

MR. KELLER: I'm looking at eight to ten witnesses right now, I think. I mean, that may be cut down.

THE COURT: Okay. Well, I know this is your first appearance here, and I'm certainly not going to hold that against you, but a trial with eight to ten witnesses in this jurisdiction is not going to take two weeks. So that to this Court sounds like a trial that would take three to five days --

MR. KELLER: Very well.

THE COURT: -- not two weeks.

MR. KELLER: Our judges ask us for the maximum possible, so I thought I'd give you that.

THE COURT: All right. Mr. Lowell, what is your perspective, understanding that you are flying a little blindly on the discovery issue, but your best estimate?

MR. LOWELL: Again, I followed along what both of you just said. I'd be shocked if there were eight to ten witnesses, and even if there were, I understand what Your Honor has said. After jury selection, I imagine that this would be five trial days or fewer depending on how you're scheduling trial days.

THE COURT: All right. I am inclined to set it for five days for now with the expectation that you all will work to narrow issues such that it might end up being less than that. From the Court's perspective, based on what I've reviewed in the indictment, I don't know that there's a lot of complexity here, but obviously I don't know all the inner workings of the case.

So taking a look at the Court's schedule, I'm inclined to set this matter for trial to begin on January 26th, 2026.

Does that work for you, Mr. Lowell?

MR. LOWELL: I believe it does. That's a Monday, I'm assuming, right?

THE COURT: It is.

MR. LOWELL: The week before is a holiday, I think. Is that right?

THE COURT: The Monday before is Martin Luther King Jr. Day.

MR. LOWELL: So I think that does make sense. Let me confirm both with my client and make sure from what we know of what is going on in the work of an Attorney General, but I assume that's going to be just great. So hold on just one second.

THE COURT: All right. And while Mr. Lowell is conferring with his client and co-counsel, Mr. Keller, does that date work for the government?

MR. KELLER: That's fine, Your Honor. That works for the government.

THE COURT: All right.

MR. LOWELL: That works as the date, Your Honor.

THE COURT: All right. So the Court will set this matter for a jury trial to commence on January 26th, 2026.

I want to now move to address the motions. Yesterday the Court received two filings -- before you get up, Mr. Keller, I want to address the filings that have already been made first.

The Court received two filings yesterday from the defense. The first was a notice of intent to file a motion to dismiss the indictment, challenging the appointment of

Ms. Halligan as U.S. Attorney for this district. The notice indicated that the defense intends to file that motion today.

As the parties are, no doubt, aware, Chief Judge Diaz issued an order appointing Judge Cameron Currie of the District of South Carolina to address any motion related to the lawfulness of Ms. Halligan's appointment. Judge Currie has set a hearing on the motion that was filed in *U.S. v. Comey* to commence on November 13th, 2025, at 10:00 a.m.

I don't want to get into the specifics of the substance for obvious reasons, but it strikes me that the motions would likely be identical or nearly identical, so are the parties inclined to agree to consolidate the motion in this case with the motion in the *Comey* case such that they could be heard at once?

MR. LOWELL: Do you want me here or there? Here.

Judge, in notice of an intent, we assumed that that would be the procedure because it makes sense. Whether they are identical, the arguments are so closely aligned that there's not going to be a lot for the judge to have to consider different, and neither the opposition.

So the answer from us is we are not only in favor, we hope that they'll be consolidated. The reason we gave you the notice, and Judge Currie the notice, so that you would be on notice that we are thinking that they should be. We are prepared to operate in that.

I have the motion to file this morning. I have a copy of it in the court. I'll hand it up to the Court. We will file it electronically. I have a courtesy copy for the government. And I think we'd be able to proceed exactly in the same schedule in the case of *U.S. versus Comey*.

THE COURT: Thank you.

Mr. Keller?

MR. KELLER: I would agree with Mr. Lowell, Your Honor. That does make sense.

THE COURT: It makes sense from the Court's perspective too. So here's what I will do. And the Court obviously appreciates the notice.

After the motion is officially filed, I will enter an order transferring it to Judge Currie, and you all can work through the logistics of consolidation with her, and given your representations to me today, I think it's more appropriate to have Judge Currie set the remainder of any briefing schedule to the extent additional briefing would be necessary that is specific to this case. So I'll enter an order on those terms and let her take it from there.

Anything further from either party on that specific motion?

MR. KELLER: Nothing from the United States, Your Honor.

MR. LOWELL: No. Let the record show that prior to

the official filing, which will happen after we proceed here, I'm handing the government a courtesy copy so that they are well aware of our grounds.

THE COURT: All right. Anything further on this motion?

MR. LOWELL: On that motion, no, but I do want to address other motions, please.

THE COURT: All right. Well, as you can tell, I'm all about structure, so I'm going to take it in the order that it was received, and then I'll give you an opportunity to address anything that you need to.

So the second filing the Court received yesterday was a Motion to Enforce Rules Prohibiting Extrajudicial Disclosures and Statements by the government. The motion relates primarily to communications regarding this case that Ms. Halligan purportedly engaged in with a journalist detailed in an article that was published on Monday of this week.

From the Court's perspective, the motion does not seek a sanction against the government, and it does not even really require a finding that Ms. Halligan engaged in any wrongdoing whatsoever. Instead, it merely asks the Court to order the government to comply with what the defense views as the government's obligations under various legal authorities and ethical guidelines, and it also asks the Court to order

the government to keep a log of any communications it has with the media.

One possibility here is that, without admitting that there was anything improper about the communications alleged to have taken place already, the government may simply agree that the rules are as the defense suggests they are and they agree to abide by those legal and ethical principles as this case proceeds, and in that instance, the only question for the Court to decide would be whether to order the government to maintain a log of all contact with the media.

So with that preamble outline, Mr. Lowell, would you agree that the motion does not request a finding that Ms. Halligan engaged in wrongdoing, it just asks for an order to avoid wrongdoing in the future and also asks for the log on the terms that you outlined?

MR. LOWELL: I agree with your recitation of what it seeks and that no finding is necessary. We are most concerned, given what we read, that that doesn't happen again, whether or not we have to, today, decide whether it violated any of the six things we have alleged it could have violated.

I would only add to Your Honor one piece of this. Because in that exchange Ms. Halligan expressed to the journalist that she was operating on an encrypted app in which she had created a deletion mechanism that I believe was

very quick, another part of our request is that the government, as in a normal litigation hold, not be deleting any such records, not to go backwards, not to stop or change anything, to keep them intact for what might be additional motions that are going to be made. So there was that piece of it as well.

THE COURT: All right. Thank you, Mr. Lowell.

Mr. Keller, with that in mind, the Court I think really sees three options here: Either the government does not oppose the relief requested in the motion, or the government intends to oppose the motion in its entirety, or the government simply intends to impose perhaps the requirement that it maintain a log and/or the issue related to the litigation hold.

What is the government's position as it stands?

MR. KELLER: Your Honor, the government agrees with you that there is no sanction requested in the motion itself. The government just did receive it last night.

If the Court would impose a log, I would point out to the Court that the defendant has also been active on the internet. For example, I believe there was a tweet sent out proclaiming her innocence, so if we're going to do one for the government, I believe it would be equally valid for one for the defendant if there are any statements that are made publicly to the press.

MR. LOWELL: May I, Judge?

THE COURT: No, Mr. Lowell.

From the Court's perspective, it's not clear to me if you're saying that you are opposing any of the relief. Are you saying that the government is agreeing to keep a log of its contact with the media and provide that to the defense and also comply with the litigation hold request?

MR. KELLER: I agree with the litigation hold request. That would be part of any litigation, Your Honor. I don't know that a log is required in this case, but my request would be, if we're going to impose a log on the United States, a similar log should be imposed on the defendant so that we don't have her making statements of innocence before the press itself.

THE COURT: All right. I think given your representations and given that the motion was just filed yesterday, I'm going to give you an opportunity to discuss it internally and figure out what, if any, opposition you want to file to the motion. So I'm just going to set an expedited briefing schedule on the motion because this is obviously an issue that the Court wants to address promptly.

So what I will do is I'm going to direct the government to file any opposition to the motion no later than Tuesday, October 28th, at 5:00 p.m. And if the government does not oppose the motion, I still want you to file

something indicating your position so that the Court understands where you stand on that motion.

And then subsequently, any reply to the government's filing shall be made by the defense no later than Thursday, October 30th, at 5:00 p.m.

Are we understood on the schedule the Court has laid out?

MR. KELLER: Yes, Your Honor.

THE COURT: Mr. Lowell?

MR. LOWELL: I do.

THE COURT: All right.

MR. LOWELL: One comment on that, please?

THE COURT: You can come forward.

MR. LOWELL: Thank you. I just want to state what I think should be clear. The relief that we're seeking is for the reasons we have said. Those include the fact that the rules we cite apply to lawyers and especially government lawyers.

We have not been accused nor have we done anything that would be similar to what we have pointed out in the motion, but most importantly -- and I know Your Honor may know this -- what the rules that restrict lawyers are are not the rules that restrict a defendant, and the First Amendment rights of a defendant are paramount.

So a person's ability to claim her innocence, a

person's ability to do her job is not the same as the government's requirement on the rules that we have just put forward that restrain lawyers from their extrajudicial comments. I will wait to see what the government says in their opposition.

THE COURT: The Court certainly understands the requirements that are laid out in the local rules and the various ethical obligations, and I will await the government's opposition, and to the extent that you believe that something untoward has occurred, you can put it in writing. I don't think I need to hear anything further on this.

MR. KELLER: Very well.

THE COURT: Thank you.

Have the parties discussed a proposed schedule for filing any other pretrial motions?

MR. KELLER: Your Honor, Mr. Lowell and I have talked prior to coming today, and the government is going to produce the relevant discovery to this point by November 14th. That way he'll have an opportunity to review the material.

MR. LOWELL: That's mostly correct, Your Honor. I think that was an outside date, but I don't know how much discovery there is, so if I'm hearing that there are mounds and mounds and mounds and consequently it takes that long,

then it takes that long, but I don't have a sense of how much. Normally in this court, I know that something like discovery would be ordered sooner. I just don't know the volume. So I needed some representation about that.

MR. KELLER: And, Judge, I've begun to go through the discovery. That's why I've been kind of vague today. And if I can get it to Mr. Lowell within a week, I'm happy to do that, but I'm just, again, trying to give you some outside dates of when it would be the latest I would get it to him.

THE COURT: It's certainly customary in this district for government counsel to be ready with, at a minimum, a first production of discovery at or around the time of the arraignment. So November 14th seems a little far out, from this Court's perspective, especially since we have a trial date that is currently in January.

I want to set a motion schedule consistent with our local rules that usually requires initial motions to be filed two weeks after the arraignment. So I'm going to ask you all to meet and confer on this issue of the discovery, and I guess to the extent you have not reached any agreement, I'll have you submit some filings, and I will lay out a timeline for that shortly, but November 14th is not consistent with how we operate here.

MR. KELLER: Very well. I'm sure we can come to some agreement, Your Honor.

MR. LOWELL: Once I hear the volume we're talking about -- and I understand that you don't have your hands around it yet -- but I think we could get that done pretty quickly in terms of that.

We will meet and confer, and we will report to the Court. I would like it much sooner because, again, what you've said about the motions practice, which I know will be pegged not just to today but what I see in the discovery, so I'll have a moment more to say about the motions after we've done that, but we will comply with your meet-and-confer and come up with, hopefully, a much shorter period than November 14th, which would be our preference as well.

THE COURT: All right. Let me ask you this, Mr. Lowell. Do you intend to -- and obviously you don't have to say anything definitively today -- I understand that -- but do you intend to file a motion to dismiss based on vindictive or selective prosecution consistent with the motion that was filed in the *Comey* case?

MR. LOWELL: I think the worst-kept secret in this case may be the fact that we believe that Ms. James has an equally meritorious motion to dismiss for a combination of what the law considers to be vindictive prosecution; depending on what the discovery shows, the possibility of selective prosecution; and we may also have a motion, Your Honor, based on the face of the indictment not alleging

the appropriate crimes for which they are charged. At this stage, I think those are the three that I could tell the Court about.

THE COURT: All right. So this is what I am inclined to do. I think I'm going to follow Judge Nachmanoff's lead here, even though this is not what we would normally do. I'm going to set essentially two motion schedules; one motion schedule for the vindictive and/or selective prosecution motion to be filed, and I will set a hearing date for that motion, and then I will set a second motion deadline that could involve other motions that you wish to file in light of what you receive in discovery.

So given the schedule the Court is about to set, in that meet-and-confer engagement that you have, I expect that the discovery associated with this potential first motion needs to be front-loaded so that the schedule does not get disrupted because I want to keep this moving.

So I'm going to set a deadline for the vindictive and/or selective prosecution motion to be filed two weeks from today, on November 7th; opposition to the motion to be filed on 11/21, November 21; any reply to be filed on November 28th. All briefs should be filed by 5:00 p.m. And the Court will set that matter for a hearing on December 5th at 11:00 a.m.

And then as to the second schedule, I will require

that any additional motions be filed by Monday, November 17th. Oppositions will be due on December 1st. Replies due on December 8th. And the Court will set a hearing on those motions on Wednesday, December 17th, at 11:00 a.m.

Any issues with the hearing dates?

MR. KELLER: None, Your Honor.

MR. LOWELL: None, Your Honor.

THE COURT: All right. Are we all clear on the dates that the Court has outlined?

MR. KELLER: Yes, Your Honor.

THE COURT: All right. Normally --

MR. LOWELL: One question, Your Honor.

THE COURT: Yes.

MR. LOWELL: Hold on one second, please.

(Pause in the proceedings.)

MR. LOWELL: Those dates are fine, Your Honor.

THE COURT: All right. Normally, it's this Court's practice to enter a discovery order at the arraignment as well. It seems, based on the comments that you've made thus far, it's fair to say that you all haven't yet reached agreement on a discovery order. Is that fair?

MR. KELLER: That's fair.

MR. LOWELL: That's fair.

THE COURT: So as it relates to all things

discovery -- production, discovery order -- I'm going to direct you all to meet and confer, and if no agreement is reached by October 31st, which is next Friday, each party shall submit to the Court a proposed discovery plan by November 3rd at 5:00 p.m.

You can submit a brief in support of your request. Those briefs should not exceed 10 pages, and obviously, I hope that the substance of those briefs will just focus on the areas of dispute. If you agree on the overwhelming majority, then let's just focus on the areas where we don't.

As I'm sure you will learn, Mr. Keller, the Court in this district has a standard discovery order that has been negotiated, and that seems like a reasonable place to start. So if you all cannot reach agreement, then we'll address it on the schedule the Court has outlined.

MR. KELLER: Very well.

THE COURT: All right. Anything further on motions or discovery?

MR. LOWELL: Not at this time, Your Honor. After we -- until we meet and confer -- we hopefully will have an agreement. If not, you will be the second to know.

THE COURT: Mr. Keller, anything further on motions?

MR. KELLER: Nothing further, Your Honor. Thank you.

THE COURT: All right. Thank you.

Before we proceed to addressing bond, I do want to address the Due Process Protection Act. Because this is Ms. James's first appearance, the Court must, pursuant to the Due Process Protection Act and Rule 5 of the Federal Rules of Criminal Procedure, remind the government of its obligations.

Mr. Keller, do you and Ms. Halligan and the members of the prosecution team understand that you are required to produce all exculpatory evidence to the defense pursuant to *Brady v. Maryland* and its progeny?

MR. KELLER: We do, Your Honor.

THE COURT: And do you understand that not doing so in a timely manner may result in serious consequences, including but not limited to exclusion of evidence, adverse jury instructions, dismissal of charges, contempt proceedings, disciplinary actions, or sanctions by the Court?

MR. KELLER: Yes, Your Honor.

THE COURT: All right. Thank you.

The Court will now enter an order as it is obligated to do under Rule 5(f). This order requires the government to comply with its obligations to produce any such evidence in the manner the Court has just described. So the Court will now enter that order.

Let's now move to the issue of detention. Given that Ms. James appeared here today on a summons, the Court assumes that the government is not seeking detention; is that

correct, Mr. Keller?

MR. KELLER: That's correct, Your Honor.

THE COURT: Mr. Keller, has the government received the pretrial services report?

MR. KELLER: We have not, Your Honor.

MS. HALLIGAN: We did.

MR. KELLER: We did?

Oh, we have, I understand. I'm sorry.

THE COURT: Do you need a moment?

MR. KELLER: If I could, Your Honor.

THE COURT: Yes.

(Pause in the proceedings.)

MR. KELLER: Thank you, Your Honor.

THE COURT: All right. Any objections or changes you wish to make?

MR. KELLER: No, Your Honor.

THE COURT: Mr. Lowell, have you received a copy as well?

MR. LOWELL: We have and discussed it with the Attorney General.

THE COURT: Any objections or changes you wish to make?

MR. LOWELL: We do not.

THE COURT: The Court will adopt the recommendation contained in the pretrial services report, and I will place

Ms. James on a personal recognizance bond that she can sign after we are done here today.

Probation has not recommended any conditions on the bond, and based on the government's agreement and the Court's review of the pretrial services report, the Court agrees and finds that no conditions are necessary.

The last thing that the Court wanted to address is to say that, other than Mr. Bosse, I don't believe anyone on either side of this case has appeared in this division of this Court before.

So it's the Court's expectation that all parties will familiarize themselves with how we do things here as I don't want there to be any missteps based on misunderstandings of procedure as to how we govern ourselves in this division of the Eastern District of Virginia.

Are we all clear on that front as well?

MR. KELLER: Yes, Your Honor.

MR. LOWELL: We are as well.

THE COURT: Thank you.

Anything further from the government today?

MR. KELLER: Nothing from the United States. Thank you, Your Honor.

THE COURT: Thank you.

Anything further from the defense, Mr. Lowell?

MR. LOWELL: Nothing, Your Honor.

THE COURT: All right. Thank you as well.

Thank you, counsel, for your time today.

The Court also wants to thank our court security officers, the United States Marshal Service, all of the members of law enforcement, and our courthouse staff who worked tirelessly to ensure that today's proceedings went smoothly. So thank you all.

The Court stands adjourned.

(Proceedings adjourned at 11:36 a.m.)

CERTIFICATION

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

___________________/s/___________________

Carol L. Naughton

October 27, 2025