**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**

*Norfolk Division*

UNITED STATES OF AMERICA *
*
v. * Case No. 2:25-cr-122-JKW-DEM
*
LETITIA A. JAMES, *
*
Defendant. *
*
* * * * * * *

**ATTORNEY GENERAL LETITIA A. JAMES' REPLY IN SUPPORT OF HER MOTION TO ENFORCE RULES PROHIBITING THE GOVERNMENT'S EXTRAJUDICIAL DISCLOSURES AND STATEMENTS**

The government's statements in Court and its response brief confirm that the parties agree on two of the issues raised by Attorney General James' Motion: (1) federal, local, and ethical rules prohibit attorneys from making extrajudicial statements that may lead to prejudice in a criminal case, and (2) as government counsel acknowledged at the October 24, 2025, initial appearance and arraignment, the government agreed to comply with the litigation hold request made in the Motion to prevent any further deletions and to preserve any other extrajudicial communications that may have been made. That is where the agreements end.

The rest of the government's opposition misunderstands or misstates the issue that Attorney General James raised and attempts to draw a false equivalence between the government's extrajudicial statements (which it does not contest are governed by the rules cited in the Motion) and Attorney General James' personal speech, which is protected by the First Amendment.

There appears to be no dispute that Lindsey Halligan, the purported United States Attorney who brought this case, signed the indictment, and presented it to the grand jury (1) initiated contact

with a reporter to address specific evidence in the case, including evidence she necessarily presented to the grand jury; (2) did so on an encrypted messaging app in contravention of the rules governing official communications; (3) set her communications to automatically delete after a few hours, also outside the rules for preserving official records; (4) tried to make her communications *secret* by claiming they were "off record;" and (5) did so in the face of federal regulations and rules that severely limit extrajudicial statements of *lawyers* in criminal cases. The comparison that the government now offers is to a *public* statement by a *defendant* who has faced almost weekly assertions by the President, or those carrying out his bidding, calling for her prosecution and conviction or making other disparaging comments against her. The government's argument appears to be that "two wrongs don't make a right." But the defendant has not contravened the cited rules; the government has. The relief requested in the Motion is intended only to ensure that does not happen again and that, if it does, the government does not delete the evidence of its wrongdoing. That relief should be unobjectionable to the government.

## I. THE GOVERNMENT'S OPPOSITION CONFIRMS THE NECESSITY OF AN ORDER ENFORCING THE RELEVANT RULES GOVERNING EXTRA-JUDICIAL STATEMENTS AND PRESERVING GOVERNMENT COMMUNICATIONS.

### A. This Court Should Issue An Order Requiring the Government to Comply with Federal, Local, and Ethical Rules Prohibiting Extrajudicial Statements.

The opposition does not dispute any of the facts concerning Ms. Halligan's conduct. Instead, it tries to deflect that conduct by offering a false comparison to Attorney General James' *public* comments, by exaggerating the relief being sought, and by claiming, incorrectly, that Ms. Halligan believed her attempt at "off record" exchanges with a reporter was part of her prosecutorial job to "protect [her] client from the substantial undue prejudicial effect" from the

reporting, Opp. at 5 (quoting ABA Model R. of Prof'l Cond. 3.6(c)), or to "protect her client" against "half-truths" in the media, Opp. at 8.

1. <u>False Comparison</u>

The government's attempt to point the finger at Attorney General James is misplaced. Most importantly, it ignores the difference between a lawyer prosecuting a case on behalf of the United States and a lawyer who is a defendant. Each regulation and rule cited in the Motion—the Federal Rules of Criminal Procedure, the Code of Federal Regulations, the Local Rules, the cited rules of professional responsibility, and the Justice Manual—governs the former, not the latter.

The government's reliance on *United States v. Trump*, 88 F.4th 990 (D.C. Cir. 2023)—a case affirming a limited gag order placed on then-defendant Donald Trump in response to his public statements *threatening witnesses, participants, and the judiciary during litigation*—to defend Ms. Halligan's interactions with the reporter is entirely misguided. Opp. at 3–4. *Trump* is relevant only to the extent that it proves the relative strength of a criminal *defendant's* First Amendment rights and the extraordinary circumstances required to justify any burden on such rights. *See id.* ("[A] criminal defendant—who is presumed to be innocent—may very well have a greater constitutional claim than other trial participants to criticize and speak out against the prosecution and the criminal trial process that seek to take away his liberty."). The *Trump* court set out facts justifying the order in vigorous detail, including a timeline of President Trump's extensive attacks on witnesses, court officials, judges, law clerks, and other government personnel. *See id.* at 1010. It also catalogued the violent and threatening responses resulting from President Trump's statements. *See id.* at 1011.

Even under those extraordinary circumstances, the court still found that "Mr. Trump [was] free to make statements criticizing the current administration, the Department of Justice, and the

Special Counsel, as well as statements that this prosecution is politically motivated or that he [was] innocent of the charges against him." *Id.* at 1028. Attorney General James' speech, including following her initial appearance, cannot be reasonably compared to the statements that led to the *United States v. Trump* gag order, and regardless, would have been outside of its reach.

2. <u>No Request For A "Chilling" Order</u>

The opposition's hyperbolic claim that the Motion seeks something like a gag order, Opp. at 3, fares no better. Government counsel and their agents have an ongoing obligation to refrain from certain types of extrajudicial statements and disclosures that may jeopardize a fair trial in this case. James Mot. at Sec. I. The defense is not asking the Court to "chill" all the government's interaction with the media; it concedes that *many* statements that "a reasonable person would expect to be further disseminated by any means of public communications" are permissible.[1] James Mot. at 9 (quoting Loc. Crim. R. 57.1(C)). Rather, the defense is seeking the Court's assistance in assuring that the government adheres to the rules it has set for itself.

3. <u>"Correcting" The Record to "Protect" Her Client</u>

The government's attempt to defend Ms. Halligan's conduct on the ground that she was just "protecting her client" from the "prejudice" of "half-truths" is unavailing. What Ms. Halligan did was outside a prosecutor's proper role, and it created the very harm that the extrajudicial statement prohibitions are intended to prevent. The Court should not, as the government appears to seek, approve that conduct, which would all but guarantee its repetition. It should make clear that the government is required to follow its own rules.

[1] Another red herring, based on nothing in the Motion, is the government's suggestion that Attorney General James is "attempt[ing] to chill all Government/media interaction" to later play "a 'gotcha' game" over the government's failure to maintain a document or include a contact in its log. Opp. at 3. Following long-standing rules on extrajudicial statements is not "gotcha," it is basic to the government's obligation to protect fair trials.

First, public reporting in the media does not inherently constitute "unfair prejudice" to the government. Opp. at 6. The First Amendment protects the right of the press and the public to publish truthful information that it has lawfully obtained, *even if* the government itself disclosed or made possible the press's access to that information. The Supreme Court has consistently emphasized the critical role of the press in reporting on government operations and judicial proceedings. *See, e.g.*, *Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469 (1975)). This is not "undue prejudice" to the government.

Second, the rules were written precisely to prevent the stated goal of the government's opposition. Instead of volleying responses (especially those with off-the-record unaccountability) to every perceived inaccurate news report, prosecutors are supposed to make their cases in courtrooms, not in the court of public opinion. The government's misdirected view of its duty to engage in the latter was the starting point for Ms. Halligan's improper behavior.

Third, the government's assertion that Ms. Halligan was only trying to protect "her client" raises the question of who she believes "her client" to be. Her "client" is neither the President, nor the Attorney General, nor the Administration, nor even her Office. It is the United States, as the case caption makes clear, and "[t]he United States wins its point whenever justice is done its citizens in the courts."[2] The point remains true regardless of whether the outcome is the one that the government favors. "Justice is done" when its "citizens in the courts" receive a fair trial. And in any event, a defendant's fair trial rights decidedly trump any so-called "unfair prejudice" to the government's case from public reporting. Courts have held that extrajudicial statements and comments by attorneys may be restricted to protect a defendant's fair trial rights and the integrity

[2] DOJ, *Remarks as Delivered by Attorney General Merrick B. Garland*, https://www.justice.gov/archives/opa/speech/attorney-general-merrick-b-garland-delivers-remarks-office-access-justices-gideon (Mar. 17, 2023).

of judicial proceedings—which override any desire by government prosecutors to "attempt to protect [Ms. Halligan's] client from unfair prejudice." Opp. at 6. *See, e.g.*, *Sheppard v. Maxwell*, 384 U.S. 333, 361 (1966); *Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1066 (1991).

The government also attempts to excuse Ms. Halligan's extrajudicial disclosures by claiming she "did not reveal anything that transpired before the grand jury." Opp. at 7. Even if that were accurate, it would not make her conduct here appropriate. The Court does not need to rule on whether Rule 6(e) was violated to grant the relief sought by Attorney General James. *But see, e.g.*, James Mot. at 6, 13. Following the prohibitions in the body of rules cited in the Motion avoids that risk altogether.

For example, as a prosecutor bound by the Justice Manual, Ms. Halligan should know that the Justice Manual has clear, decisive rules prohibiting the exact types of extrajudicial statements and disclosures she made here. Those rules of non-disclosure include contacts with a member of the news media and specifically limit disclosure of any potential grand jury matter. *See* JM 1-7.100 ("DOJ personnel should presume that non-public, sensitive information obtained in connection with work is protected from disclosure, with few exceptions); *see also* JM 1-7.600 (non-disclosure rule prohibiting DOJ personnel from making any statement or disclosing any information "that reasonably could have a substantial likelihood of materially prejudicing an adjudicative proceeding"); *see also* JM 1-7.210; JM 1-7.310; JM 1-7.400; JM 1-7.610. Just because, in the government's view, she did not "reveal anything that transpired" before the grand jury in this set of exchanges, does not mean she has complied with DOJ's own prohibitions against making extrajudicial statements that "reasonably *could* have a substantial likelihood of materially prejudicing an adjudicative proceeding." Certainly Ms. Halligan's comments about the credibility of a witness (who presumably testified before the grand jury), the strength of the government's

evidence (necessarily including evidence she presented to the grand jury), and the purported accuracy of public reporting about the case reasonably *could* have a likelihood of materially prejudicing the defendant's right to a fair trial.

For all these reasons, the government should be prohibited from making any further improper disclosures. Proactive intervention by this Court is necessary to protect Attorney General James' constitutional rights and the integrity of this Court's procedures. *See Sheppard v. Maxwell*, 384 U.S. 333, 361 (1966) (finding that courts may restrict the communications of trial participants to protect the right to a fair trial without offending the First Amendment or the freedom of the press); *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 555 (1976).

### B. A Preservation Order for All Communications With Any Media or Journalist Regarding This Case Is a Necessary Preventative Measure Given the Government's Past Conduct.

Defense counsel understood the government to agree, at the initial appearance and arraignment, to entry of the preservation order sought by the defense, which would require the government to preserve all communications with the media and to take all reasonable steps to prevent the deletion or destruction of any records or communications related to the investigation or prosecution of this case. To the extent the government has changed or may change its position, such an order is clearly warranted here, in particular because Ms. Halligan attempted to cloak her communications with the press using disappearing messages on an encrypted messaging app, in contravention of the preservation requirements under federal records law. *See* D.E. 21-2 (Ex. B) at 16 ("It's obvious the whole convo is off record. There's disappearing messages and it's on signal."); James Mot. at 11 n.2 (discussing federal preservation obligations). Maintaining a log of such communications—which the government does object to (Opp. at 3)—is a narrowly-tailored, non-burdensome method to ensure the government's compliance with the rules. The government

has not put forward a serious argument against that requested relief or why it would be unwarranted here: it claims the request is "overly broad"—it is not—and that it is "not required"—which only begs the question whether it should be. Opp. at 2.

The government is of course free to continue to communicate publicly about this case as otherwise permitted by the previously cited federal, local, Departmental, and ethical rules and regulations.

## II. THE COURT HAS THE AUTHORITY TO ISSUE THE ORDER REQUESTED TO ENFORCE PROHIBITIONS AGAINST EXTRAJUDICIAL STATEMENTS.

District courts have statutory and inherent authority to enforce federal and local rules and to impose penalties or other remedies for violations of those rules. *See In re Fisherman's Wharf Fillet, Inc.*, 83 F. Supp. 2d 651 (E.D. Va. 1999); Fed. R. Crim. P. 57. This includes rules expressly barring certain types of prejudicial or extrajudicial statements by prosecutors. *See* E.D. Va. Loc. Crim. R. 57.1(C). District courts also have the inherent power to order the preservation of material or evidence in the hands of a party before the Court, here the government. *See United States v. Salad*, 779 F. Supp. 2d 503, 507 (E.D. Va. 2011) (collecting cases). An Order requiring the government to follow the Federal Rules of Criminal Procedure, the Code of Federal Regulations, the Local Rules of this District, various rules of ethical and professional responsibility, and the Department of Justice's Justice Manual in order to prevent future disclosures of investigative and case materials, as well as to prevent further extrajudicial statements to the media and public concerning this case and any parties or witnesses, is the appropriate measure to protect Attorney General James' right to a fair trial. *See United States v. Abrego Garcia*, No. 3:25-cr-00115, D.E. 182 at 2 (M.D. Tenn. Oct. 27, 2025) (observing that the local criminal rule "prohibits DOJ and DHS employees from making extrajudicial statements that will 'have a substantial likelihood of materially prejudicing' Abrego's right to a 'fair trial'").

## CONCLUSION

For the foregoing reasons, Attorney General James respectfully requests that this Court issue an order requiring the government to comply with relevant rules prohibiting extrajudicial disclosures concerning this case and preserve and log any communications with any media or journalist concerning the investigation or prosecution of this case, in light of Ms. Halligan's past conduct.

Dated: October 30, 2025

Respectfully submitted,

*/s/ Abbe David Lowell*
Abbe David Lowell (*admitted pro hac vice*)
David A. Kolansky (*admitted pro hac vice*)
Isabella M. Oishi (*admitted pro hac vice*)
LOWELL & ASSOCIATES, PLLC
1250 H Street NW, Suite 250
Washington, DC 20005
Tel: 202-964-6110
Fax: 202-964-6116
ALowellpublicoutreach@lowellandassociates.com
DKolansky@lowellandassociates.com
IOishi@lowellandassociates.com

*/s/ Andrew Bosse*
Andrew Bosse (VSB No. 98616)
BAUGHMAN KROUP BOSSE PLLC
500 E. Main Street, Suite 1400
Norfolk, VA 23510
Tel: (757) 916-5771
ABosse@bkbfirm.com

*Attorneys for Letitia A. James*