**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA**

*Norfolk Division*

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | Case No. 2:25-cr-122-JKW-DEM |
| | * | |
| LETITIA A. JAMES, | * | |
| | * | |
| Defendant. | * | |
| | * | |

\*     \*     \*     \*     \*     \*     \*

**ATTORNEY GENERAL LETITIA A. JAMES' MOTION TO DISMISS INDICTMENT
FOR VINDICTIVE AND SELECTIVE PROSECUTION**

Attorney General Letitia A. James, by and through undersigned counsel, moves this Court to dismiss the government's indictment pursuant to Federal Rule of Criminal Procedure 12(b). As explained further below, the government targeted AG James for prosecution because of the President's genuine animus towards her protected campaign speech and fulfillment of her statutory obligations as New York Attorney General. This indictment is the product of vindictive and selective prosecution, in violation of the Fifth Amendment. Because this prosecution is flagrantly unconstitutional, this Court should dismiss the indictment with prejudice.

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

STATEMENT OF FACTS ................................................................................................... 2

    I.    Attorney General James Fulfills Her Duties as New York Attorney General and the President Promises Revenge. ......................................................................................... 2

    II.    Retaliation Against AG James, a Perceived Political Enemy, Has Been a Focal Point of President Trump's Second Term. ..................................................................................... 9

        A.    DOJ's "Weaponization Working Group" and Other Agencies Target Attorney General James with Fruitless Investigation. ...................................................................... 9

        B.    With No Evidence of a Crime, the President and DOJ Scramble for AG James' Resignation or Indictment. ................................................................................................ 13

        C.    President Trump "Appoints" Lindsey Halligan to Charge Political Adversaries. ........ 17

        D.    Career Prosecutors Conclude There is No Probable Cause to Bring Charges and are Fired. ................................................................................................................................... 18

        E.    Ms. Halligan Indicts Attorney General James. .......................................................... 19

        F.    After Indictment, the President and DOJ Officials Confirm Retaliatory Motive. ........ 19

        G.    DOJ Subpoenas NYOAG, Another Form of Presidential Revenge. ............................ 20

ARGUMENT ...................................................................................................................... 22

    I.    The Indictment Should Be Dismissed as Vindictive Prosecution. .................................... 22

        A.    Direct Evidence Establishes That the Government Vindictively Prosecuted Attorney General James. ................................................................................................................... 24

        B.    Objective Evidence Establishes That AG James Would Not Have Been Prosecuted But-For President Trump and His Officials' Genuine Animus. .................................................. 32

    II.    The Indictment Must Be Dismissed as Selective Prosecution, in Violation of Equal Protection. ............................................................................................................................. 34

        A.    The Government Has Declined to Investigate and Prosecute Similarly-Situated Individuals .......................................................................................................................... 35

        B.    The Charges Against AG James are Invidious and in Bad Faith. ............................... 39

    III.    The Indictment Must Be Dismissed With Prejudice ................................................... 41

    IV.    In the Alternative, Attorney General James is Entitled to Discovery to Further Demonstrate the Illegal Basis for the Charges Against Her. .................................................. 42

i

# TABLE OF AUTHORITIES

## Cases

*Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978)...................................................... 23, 35

*Dixon v. District of Columbia*, 394 F.2d 966, 968 (D.C. Cir. 1968) ................................ 24

*Garten Trucking LC v. Nat'l Lab. Rels. Bd.*, 139 F.4th 269, 277 (4th Cir. 2025) ...................... 29

*Hartman v. Moore*, 547 U.S. 250, 256 (2006)................................................................ 23

*Monitor Patriot Co. v. Roy*, 401 U.S. 265, 272 (1971)...................................................... 29

*Newton v. Rumery*, 480 U.S. 386, 397 (1987)................................................................ 22

*People v. Trump Org., Inc.*, 169 N.Y.S.3d 612, 614 (App. Div. 2022) ................................... 4, 21

*People v. Trump Org., Inc.*, 452564/2022, No. 457 at *3 (N.Y. Sup. Ct. Jan. 6, 2023)............... 28

*People v. Trump*, 192 N.Y.S.3d 95, 97–98 (App. Div. 2023) ............................................. 28

*People v. Trump*, 237 N.Y.S.3d 443, 446 (App Div. 2025)................................................ 21

*People v. Trump*, Index No. 452564/2022, Decision & Order (N.Y. Sup. Ct. Feb. 16, 2024)...... 25

*See District of Columbia v. Trump*, No. 8:17-cv-01596, ECF No. 1 (D. Md. June 12, 2017)...... 27

*See Trump v. James*, No. 22-cv-81780, ECF No. 14 (M.D. Fla. Dec. 21, 2022)........................ 27

*Trump v. James*, No. 21-cv-1352, 2022 WL 1718951, at *2 (N.D.N.Y. May 27, 2022) ........ 21, 27

*United States v. Abrego-Garcia*, No. 3:25-cr-00115, 2025 WL 2814712, at *4 (M.D. Tenn. Oct. 3, 2025) ................................................................................................ 24

*United States v. Adams*, 870 F.2d 1140, 1145 (6th Cir. 1989) .............................................. 22, 30

*United States v. Armstrong*, 517 U.S. 456, 465 (1996)........................................................ 35, 43

*United States v. Aviv*, 923 F.Supp. 35, 37 (S.D.N.Y. Apr. 22, 1996)...................................... 32

*United States v. Ball*, 18 F.4th 445, 454 (4th Cir. 2021) ..................................................... 23

*United States v. Banks*, 383 F. Supp. 389, 392 (D.S.D. 1974) .............................................. 41, 42

*United States v. Batchelder,* 442 U.S. 114, 125 (1979) ....................................................... 34

*United States v. Bundy*, 968 F.3d 1019, 1031 (9th Cir. 2020)............................................... 42

*United States v. Catlett*, 584 F.2d 864, 868 (8th Cir.1978) .................................................. 36

*United States v. Falk*, 479 F.2d 616, 620 (7th Cir. 1973) ........................................ 34, 40

*United States v. Gallegos-Curiel*, 681 F.2d 1164, 1168 (9th Cir. 1982) ...................... 24

*United States v. Goodwin*, 457 U.S. 368, 372 (1982) ................................................ 23, 24

*United States v. Greene*, 697 F.2d 1229, 1236 (5th Cir. 1983) ................................ 40

*United States v. Haggerty*, 528 F. Supp. 1286, 1292 (D. Colo. 1981) ........................ 39

*United States v. Hare*, 820 F.3d 93, 99 (4th Cir. 2016) ...................................... 43

*United States v. Hasting*, 461 U.S. 499, 505 (1983) ............................................ 41

*United States v. Hoover*, 727 F.2d 387, 389 (5th Cir. 1984) ................................ 36

*United States v. Johnson*, 221 F.3d 83, 94 (2d Cir. 2000) .................................... 24

*United States v. Koh*, 199 F.3d 632, 640 (2d Cir. 1999) ...................................... 23, 30

*United States v. Lewis*, 517 F.3d 20, 27 (1st Cir. 2008) ...................................... 35

*United States v. Monsoor*, 77 F.3d 1031, 1035 (7th Cir. 1996) ............................ 30

*United States v. Olvis,* 97 F.3d 739, 743 (4th Cir. 1996) ............................ 35, 36, 43

*United States v. P.H.E. Inc.*, 965 F.2d 848 (10th Cir. 1992) .............................. passim

*United States v. Sanders*, 211 F.3d 711, 717 (2d Cir. 2000) .............................. 23

*United States v. Smith*, 231 F.3d 800, 810 (11th Cir. 2000) ................................ 36

*United States v. Venable*, 666 F.3d 893, 900 (4th Cir. 2012) .............................. 35, 39

*United States v. Wilson*, 262 F.3d 305, 314 (4th Cir. 2001) ...................... 23, 28, 43

*Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) ................................ 35

*Wayte v. United States*, 470 U.S. 598, 608 (1985) ............................................ 34, 39

**Statutes**

New York Executive Law § 63(12) ........................................................................ 28

**Rules**

Fed. R. Crim. P. 6(e) ............................................................................................ 24

**Regulations**

28 C.F.R. § 50.2 ............................................................................................................. 24

## INTRODUCTION

"No one is above the law."[1]

In ordering Ms. Lindsey Halligan to bring charges against Attorney General James, President Trump, Attorney General Pamela Bondi, and "Special Attorney for Mortgage Fraud" Edward Martin have forgotten that the phrase they frequently invoke applies to them as well. The Constitution requires that law, not retribution, must motivate criminal prosecutions.

After three years of investigation, the New York Attorney General's Office, under AG James' leadership, brought a civil action in which the President, two of his children, and the Trump Organization were found liable for fraud. This lawsuit, and AG James' outspoken criticism of the President, triggered six years of targeted attacks. President Trump and his allies have used every insulting term in their vocabulary to deride AG James and call for criminal penalties in retaliation for the exercise of her rights and fulfillment of her statutory duties to fulfill her obligations as New York state's attorney general.

Since his second inauguration, the President and his hand-picked Department of Justice officials exhausted every avenue to secure the payback that the President demanded. But even after stripping AG James' security clearance, creating "working groups" on weaponization to find *anything* to substantiate a prosecution against her, commencing a five-month investigation, and sending a letter threatening her with prosecution if she failed to resign from her position, AG Bondi and Mr. Martin could not support a criminal charge. That did not sit well with the President. So the President removed what he viewed as the final roadblock to his plan—interim U.S. Attorney Erik Siebert—and installed his own lawyer, Ms. Halligan, with the singular mission of churning

---

[1] Pamela Bondi (@AGPamBondi), X (Sept. 25, 2025), https://perma.cc/Z7LP-X8XT; *see also*, Donald Trump (@realDonaldTrump), Truth Social (Aug. 24, 2025), https://perma.cc/5FC4-ECA3; Edward Martin (@USAEdMartin), X (Mar. 31, 2025), https://perma.cc/JVV3-GYKK.

1

out indictments against his political enemies.  Ms. Halligan promptly obeyed.

The charges against AG James constitute unconstitutional vindictive and selective prosecution.  AG James has presented substantial, direct evidence that she is being prosecuted as a result of the President and his officials' genuine animus towards her exercise of her constitutional and statutory rights.  Moreover, she has presented substantial, clear evidence that she was chosen for prosecution because of her exercise of these rights.  To preserve the foundational tenets of due process and equal protection under the law, AG James respectfully asks this Court to dismiss the indictment with prejudice.

**STATEMENT OF FACTS**

**I.    Attorney General James Fulfills Her Duties as New York Attorney General and the President Promises Revenge.**

On November 6, 2018, the people of New York elected AG James to serve as New York Attorney General.[2]   AG James' campaign highlighted her intention to hold the powerful accountable for breaking the law—including President Trump, who was facing investigations, lawsuits, and other serious allegations of wrongdoing.  And she did not hold back on her criticisms of the President and his actions during his first term.[3]   During her victory speech, she stated, "[Trump] should know that we here in New York—and I, in particular—we are not scared of you,"[4] and "as the next attorney general of his home state, I will be shining a bright light into every dark corner of his real estate dealings, and every dealing, demanding truthfulness at every turn."[5]   As

---

[2] Jeffery C. Mays, *Breaking Barriers, Letitia James Is Elected New York Attorney General*, N.Y. Times (Nov. 6, 2018), https://perma.cc/HYR5-39HA.

[3] Hurubie Meko, *Letitia James Ran on a Platform of Holding Trump to Account*, N.Y. Times (Oct. 9, 2025), https://perma.cc/4TRA-UFPP.

[4] Mays, *Breaking Barriers, Letitia James Is Elected New York Attorney General*, *supra* n.2.

[5] Erin Durkin, *Tish James Just Sued Trump – But They've Been at It for Years*, Politico (Sept. 21, 2022), https://perma.cc/UM7M-QTRW.

New York Attorney General, AG James inherited cases and investigations against the President

and his businesses, filed by her predecessor, Barbara Underwood.[6]  While in office, she took on

high-profile investigations, such as investigating allegations of sexual harassment by then-

Governor Andrew Cuomo, and brought high-impact lawsuits, for example, against the National

Rifle Association ("NRA"), Zelle (the online payment processor), and Citigroup.[7]

After the President's former personal lawyer testified under oath in Congress in February

2019 that President Trump had inflated his assets in financial statements, the Office of the New

York State Attorney General ("NYOAG") opened a civil investigation into the Trump Organization

and issued subpoenas for records relating to the Trump Organization's projects.[8]  AG James made

her first appearance on the President's social media after the issuance of these subpoenas, where

he retweeted:

> AG Letitia James of New York is abusing her power by targeting the POTUS. Using
> the Attorney General office as a weapon to deliberately target the President because
> of Political Bias should be against the Law and a violation of the Hatch Act!

Ex. A at No. 2.

---

[6] Shannon Van Sant, *Judge Rules New York State's Lawsuit Against The Trump Foundation Can Proceed*, NPR (Nov. 24, 2018), https://perma.cc/AR29-78Z4 (describing NYOAG's civil action against the Trump Foundation); Allan Smith, *Incoming New York attorney general plans wide-ranging investigations of Trump and family*, NBC News (Dec. 12, 2018), https://perma.cc/3HRD-Q8SY (describing the Office's investigation into Trump's potential emoluments clause violations).

[7] *See* Brian Mann, *N.Y.'s crusading attorney general wins again with NRA verdict, Trump judgment*, NPR (Feb. 23, 2024), https://perma.cc/BV7X-E9ET; Jaclyn Diaz et al., *Andrew Cuomo To Resign After Investigation Finds He Sexually Harassed Multiple Women*, NPR (Aug. 10, 2021), https://perma.cc/72VA-7Q9E; Samantha Delouya, *NY attorney general sues Zelle parent company, alleging the payment service enabled widespread fraud*, CNN Business (Aug. 13, 2025), https://perma.cc/CK37-UHS9; Jonathan Stempel, *Citigroup must face New York lawsuit over handling of fraud scams*, Reuters (Jan. 21, 2025), https://perma.cc/VXY3-77SP.

[8] William K. Rashbaum & Danny Hakim, *New York Attorney General Opens Investigation of Trump Projects*, N.Y. Times (Mar. 11, 2019), https://perma.cc/UU6W-PB2F.

NYOAG's investigation continued for over two and a half years, and so did the President's attacks on AG James. The President, his family, and the Trump Organization pushed back against the investigation at every turn.[9] He denounced the investigation, and the NYOAG's investigation into the NRA, as illegal. Ex. A at No. 2.

The investigation was hard-fought, and President Trump and his allies' attacks—including counter-lawsuits filed against AG James and NYOAG—mirrored the cadence of the investigation, and required the repeated intervention of New York Supreme Court Justice Arthur Engoron, the trial judge assigned to the investigation and case.[10] Throughout this time period, whenever a key motion, decision, or event in the investigation occurred, the President and his allies lashed out. On August 24, 2020, for example, NYOAG filed a motion to compel the Trump Organization to provide discovery, and the Trump family to sit for depositions.[11] Only a few days later, AG Bondi, who was then serving as the President's personal lawyer, stated:

> She ran on a platform of going after the President and his family and she has done that nonstop. It's embarrassing as a former Attorney General that a current Attorney General would behave that way. I think she needs to be looked at. You know, at a minimum, she needs to be disqualified from any cases involving that family. She also made a comment saying they're going to know my name laughing about the family. It's really – it's despicable what she is doing what she continues to do, she can't get away with this.

[9] Multiple levels of New York courts found that the investigations against the President and his Organization were not selective. *See New York v. Trump Org., Inc.*, 2022 WL 489625, at *5 (N.Y. Sup. Ct. Feb. 17, 2022); *People v. Trump Org., Inc.*, 169 N.Y.S.3d 612, 614 (App. Div. 2022); *People v. Trump Org., Inc.*, 190 N.E.3d 1170 (N.Y. 2022).

[10] *See* William K. Rashbaum & Danny Hakim, *Judge Orders Eric Trump to Testify in N.Y. Fraud Inquiry*, N.Y. Times (Sept. 23, 2020), https://perma.cc/4KQV-AFK4; Ilya Marritz, *N.Y. Supreme Court justice orders the Trumps to testify under oath*, NPR (Feb 17, 2022), https://perma.cc/693M-ELYE; Dareh Gregorian & Tom Winter, *N.Y. judge holds Trump in contempt for failing to produce documents in attorney general probe*, NBC News (Apr. 25, 2022), https://perma.cc/2SBA-M5GH; Bernd Debusmann Jr, *Trump drops lawsuit against New York Attorney General Letitia James*, BBC (Jan. 20, 2023), https://perma.cc/AR3R-756H.

[11] *See Attorney General James Takes Action to Force Trump Organization to Comply with Ongoing Investigation Into Financial Dealings*, Office of the New York State Attorney General (Aug. 24, 2020), https://perma.cc/X8TR-PTLW.

Ex. B. at No. 25.  Less than five years later, AG Bondi put her words into effect as President Trump's Attorney General.

On September 21, 2022, NYOAG's almost three-year long investigation culminated in a seven-count lawsuit, pursuant to New York Executive Law 63(12), against President Trump—then, a private citizen—three of his children, and his business alleging that they had falsely inflated his net worth to induce favorable loan terms, secure insurance coverage, and obtain tax benefits. *See People v. Donald J. Trump*, Index No. 452564/2022 (Sup. Ct. N.Y. Cnty.).  The lawsuit sought disgorgement of $250 million of financial benefits, to bar the Trump family from ever serving as officers or directors of a corporation in the state of New York, and to bar the President and the Trump Organization from entering into New York real estate acquisitions for five years.  *Id.*  In the two days following the filing of the lawsuit, President Trump posted about AG James nine times on social media, inexplicably, and repeatedly, calling her "Letitia 'Peekaboo' James," "racist," and a "fraud who campaigned on a 'get Trump' platform." *Id.* at Nos. 18–27.  At a rally on September 23, he called her a "disgusting human being," a "crazy radical leftist nut job," and stated that "[s]he deserves to be removed from office, immediately disbarred and banished from the legal profession forever." *Id.* at No. 28.  For the next year, until trial, President Trump attacked her and called for her prosecution fourteen times.  *See, e.g., id.* at No. 30 ("'New York Attorney General Letitia James Must Resign and Be Prosecuted for Abuse of Power — Her anti-Trump lawsuit is a staggering criminalization of politics'"); No. 62 ("To stop the local Marxist prosecutors who released rapists and murderers while persecuting conservatives, on day one of my new administration, I will direct the DOJ to investigate every radical DA and attorney general in America for their illegal racist in reverse enforcement of the law."); No. 63 ("I will direct the DOJ to investigate every radical district attorney and attorney general in America for their illegal, racist, and reverse enforcement of the

law."); *see also* Nos. 61, 69, 71, 73–75, 77, 80–82, 91 (stating the same).  His rallying cry was simple: "IF YOU GO AFTER ME, I'M COMING AFTER YOU!"  *Id.* at No. 79.

        This rhetoric persisted through trial.  Ex. A at ¶¶ 94–231.[12]  President Trump continued to attack AG James, accusing her of being corrupt, fraudulent, rigging the trial, and conspiring with other Democrats and Justice Engoron.  *See, e.g.*, *id.* at Nos. 99–103, 128, 140, 149, 159–161, 168, 180, 209.  He called the trial a "witch hunt," "election interference," "unconstitutional," and "illegal."  *See, e.g.*, *id.* at Nos. 127, 138, 158, 196, 213.  And he threatened AG James and other officials, stating:

> Weaponization is a very dirty game to play, and it can have repercussions far greater than anything that Biden or his Thugs could understand. They ought to withdraw all of their Fake, Political Indictments against their Republican Opponent, me, immediately. This is a Pandora's Box, that works two ways, and it should be closed and tightly sealed RIGHT NOW. Withdraw your Political Indictments and Lawsuits, Joe, before it is too late! *Id.* at No. 204.

President Trump also called for AG James to be "placed under citizens arrest" for "blatant election interference and harassment."  *Id.* at No. 156.  He called for her impeachment.  *Id.* at Nos. 101, 178.  He called for her resignation.  *Id.* at No. 95.  He called for her to be thrown out of office.  *Id.* at 177.  At a rally, he stated that the trial was "not constitutional," "wrong in every aspect," and that "the judge and the AG should be arrested and punished accordingly."  *Id.* at No. 212.  He exclaimed that "[s]he should be prosecuted!"  *Id.* at No. 152; *see also*, *id.* at No. 166 ("James . . . should be sanctioned and prosecuted over this complete and very obvious MISCARRIAGE OF JUSTICE!!!").  And he continued to repeat that he would "direct a completely overhauled DOJ" to investigate the prosecutors and AGs that moved against him.  *Id.* at Nos. 135, 139, 148, 175, 195, 203, 211, 215.

---

[12] Justice Engoron even imposed a gag order on the President for his attacks on the court and witnesses.  *See* Ximena Bustillo, *New York judge brings back gag order on Donald Trump in civil fraud trial*, NPR (Nov. 30, 2023), https://perma.cc/GA5P-AAGY.

As the months-long trial, with testimony from 40 witnesses, came to a close, President Trump arrived for closing arguments and stated, "[i]t's an unconstitutional witch hunt. It's election interference at the highest level...It's a very unfair trial...I have no jury. I really have no rights. Nobody thinks it's constitutional." *Id.* at No. 232. After the trial ended, President Trump stood on the steps of the New York courthouse and stated, "[s]he should be criminally liable for this … I think we should be entitled to damages." *Id.* at No. 231. Awaiting judgment over the next month, the President went on a social media blitz, Ex. A, at Nos. 233–57, stating, for example:

> And a corrupt N.Y.S. Attorney General, who sat comfortably and confidently in Court with her shoes off, arms folded, a Starbucks Coffee, and a BIG smile on her face… JUST LIKE SHE KNOWS EXACTLY WHAT THE DECISION WILL BE! The closing argument of the State was pathetic, NO WITNESSES AND NO EVIDENCE AGAINST ME! Legal Scholars are "killing" the A.G. Case. "It is a Witch Hunt!" The Judge is being badly influenced, and the Gag Order must come off! REMEMBER,THIS JUDGE RULED AGAINST ME BEFORE THE TRIAL EVEN STARTED, AND HE KNEW NOTHING ABOUT THE CASE. The public is angry over this HOAX. This trial is RIGGED!

Ex. A at No. 242. And at rally after rally, he repeated his promise to "direct a completely overhauled DOJ" to investigate the prosecutors and AGs that moved against him. *Id.* at Nos. 235–241, 249–250, 256.

In February 2024, Justice Engoron found President Trump liable for fraud and ordered him to pay $454 million in interest and penalties. *See Trump*, Index No. 452564/2022 (2/16/24, Decision & Order After Non-Jury Trial). President Trump lashed out on Truth Social, writing, among other things, "Racist, Corrupt A.G. Tish James has been obsessed with 'Getting Trump' for years, and used Crooked New York State Judge Engoron to get an illegal, unAmerican judgment against me, my family, and my tremendous business." Ex. A at No. 258. Two days later, President Trump wrote:

> Why was the Corrupt New York State Attorney General, Letitia "Peekaboo" James, allowed to dump her lawsuit, using a NEVER USED FOR THIS BEFORE STATUTE,

7

> with No Defaults, No Complaints, No Victims—ONLY SUCCESS—ONTO THE DESK OF TRUMP HATING, RADICAL LEFT JUDGE, Arthur Engoron, one of the most overturned Judges in the State, four times on this Witch Hunt alone. YOU CAN'T pick your Judge, which Bragg did, and Deranged Jack Smith did in D.C. These cases should all be thrown out!

Ex. A at No. 262.  President Trump continued to air his grievances about AG James after the decision:

> Arthur Engoron is a Rogue Judge who was intimidated by the big, nasty, and ugly mouth of Leticia James[sic], considered by many to be the WORST Attorney General in the U.S. She is a Low IQ individual who campaigned for Governor, using my name, and got TROUNCED. She and her PUPPET Engoron, who valued Mar-a-Lago at $18,000,000 when it is worth 50 to 100 times that amount, have destroyed all business prospects for New York State, that is already dying, or dead. But have no fear —*When I become the 47th President*, we will MAKE NEW YORK GREAT AGAIN!

*Id.* at No. 286.

Up until the beginning of his second term, the President continued to promise revenge.  At a rally, he vowed to his supporters, "[f]or those who have been wronged and betrayed, of which there are many people out there that have been wronged and betrayed, I am your retribution. We will take care of it. We will take care of it."[13]  Referencing AG James, among others, he stated that "playing the ref with our judges and our justices should be punishable by very serious fines and beyond that."  Ex. A at No. 316.  He continued to threaten investigation, impeachment, damages, and prosecution.  *See id.* at Nos. 261, 266–267, 270–71, 293, 304, 305.  In the twenty days before his Inauguration, the President posted about AG James six times.  *Id.* at Nos. 321–326.  These statements announced his plans and set the stage for his retaliatory actions in his second term.

---

[13] Maggie Haberman & Shane Goldmacher, *Trump, Vowing 'Retribution,' Foretells a Second Term of Spite*, N.Y. Times (Mar. 7, 2023), https://perma.cc/DUV6-HBRW.

## II.   Retaliation Against AG James, a Perceived Political Enemy, Has Been a Focal Point of President Trump's Second Term.

In his January 2025 inaugural address, President Trump made his mission for retribution clear, stating that "[t]he scales of justice will be rebalanced.  The vicious, violent, and unfair weaponization of the Justice Department and our government will end."[14] Within seven days of his inauguration, he posted a link to an article calling for AG James' prosecution, titled "Prosecute The Architects Of Trump Lawfare For Election Interference," with a picture of AG James.  Ex. A at No. 327.  The tone, and mission for his administration, was set.

### A. DOJ's "Weaponization Working Group" and Other Agencies Target Attorney General James with Fruitless Investigation.

AG Bondi took the President's mission to heart, and on the first day of her appointment, established DOJ's "Weaponization Working Group," with the stated objective to examine "[f]ederal cooperation with the weaponization" by "New York Attorney General Letitia James" to "target President Trump, his family and his businesses," among other top priorities.[15]  Ex. C. The goal was to retaliate against the President's perceived political enemies, including AG James.

In March, President Trump also issued a Presidential Memorandum, "Rescinding Security Clearances and Access to Classified Information from Specified Individuals," specifically calling out AG James, claiming "it is no longer in the national interest" for her, along with fourteen of his other perceived political opponents, to have a security clearance or access classified information. Ex. D.

---

[14] President Donald Trump, *The Inaugural Address*, The White House (Jan. 20, 2025), https://perma.cc/BW49-GG4U.
[15] Ryan Lucas, *New attorney general moves to align Justice Department with Trump's priorities*, NPR (Feb. 5, 2025), https://perma.cc/WLU8-FPBL.

The retribution campaign against AG James had only just begun.  Around the same time, another federal agency, the Federal Housing Finance Agency (FHFA), led by Director William Pulte, was also looking for dirt to use against AG James.  By April 14, they had concocted it.  Mr. Pulte delivered a criminal referral "[b]ased on media reports" to DOJ against AG James, claiming she had "in multiple instances, falsified bank documents and property records to acquire government backed assistance and loans and more favorable loan terms."  Ex. F at 1.  The criminal referral cherry-picked documents to claim fraud over three properties—one even going back to 1983—none of which was the Peronne Property at issue in the indictment.[16]  The referral asked DOJ to open a criminal investigation into AG James. *See* Ex. F at 1.  Mr. Pulte also coordinated with Edward Martin—the self-described "captain" of DOJ's Weaponization Working Group who is President Trump's close confidante and would later also be named a Special Attorney.[17]  Reporting even indicates that President Trump had been bypassing his senior DOJ leadership "by

---

[16] Mr. Pulte's conduct demonstrates how far allies of the President would go to carry out his "get James" orders. Public reports indicate that Mr. Pulte "skipped over his agency's inspector general when making criminal referrals" against President Trump's political enemies.  Reports also indicate he may have bypassed ethics rules in doing so.  Marisa Taylor & Chris Prentice, *Exclusive: Trump official bypassed ethics rules in criminal referrals of Fed governor and other foes, sources say*, Reuters (Oct. 6, 2025), https://perma.cc/HK6Y-LJVR.  The FHFA has no generalized crime-fighting or anti-fraud authority.  It does not even have an express authority to make criminal referrals besides those granted to the FHFA's Inspector General under the Inspector General Act of 1978.  In addition to violations of the act itself, Mr. Pulte may have failed to comply with the FHFA's own Privacy Act regulations, which require FHFA to "ensure" that records containing personally identifiable information are "protected from public view."  Domenic Powell, *Are Pulte's "Mortgage Fraud" Investigations Legal?*, Yale J. Reg.: Notice and Comment (Nov. 1, 2025), https://perma.cc/2U6G-S46X.

[17] Alan Feuer et al., *Trump Demands That Bondi Move 'Now' to Prosecute Foes*, N.Y. Times (Sept. 20, 2025), https://perma.cc/FC9R-U8TK.

regularly telephoning Martin for updates on his work, leaving [DAG Todd] Blanche 'frustrated and annoyed,'" according to sources.[18]

Standing outside the White House on the day the referral was released, one of the President's aides, Deputy Chief of Staff Stephen Miller, told reporters AG James "is one of the most corrupt, shameless individuals ever to hold public office" and "*is guilty* of multiple, significant, serial criminal violations" for having "persecute[d] an innocent man," referring to President Trump.[19]  President Trump also did not withhold his views about FHFA's criminal referral to DOJ, attacking AG James directly in several social media posts discussing the referral:

> Turns out you can't have your principal residence in Virginia and be AG of New York. You can't say your dad's your husband. Or claim a five-unit is a four. But that's what Letitia James did—while going after Trump for the same thing. You've got to be kidding me

Ex. A. at No. 334;

> Letitia James, a totally corrupt politician, should resign from her position as New York State Attorney General, IMMEDIATELY. Everyone is trying to MAKE NEW YORK GREAT AGAIN, and it can never be done with this wacky crook in office.

*Id.* at No. 333.

On the heels of the referral to DOJ, in May, Mr. Martin admitted that he planned to use his authority to expose and discredit opponents of the President whom he believes to be guilty.[20]  He made plain that it did not matter if there were no facts to back up President Trump's accusations or even if a charge had no merit:  "If they can be charged, we'll charge them. But if they can't be

---

[18] Andrew Feinberg, *Trump ally probing rivals' 'mortgage fraud' speaks directly with the president - and skips typical DOJ hierarchy*, The Independent (Aug. 29, 2025), https://perma.cc/4LXU-UUAC.

[19] Statement of Stephen Miller, White House Homeland Security Adviser and Deputy Chief of Staff for Policy, to Reporters outside the White House (Apr. 18, 2025), https://perma.cc/9X5G-X7YB (emphasis added).

[20] *U.S. Attorney Ed Martin Holds News Conference*, C-SPAN (May 13, 2025), https://www.c-span.org/program/news-conference/us-attorney-ed-martin-holds-news-conference/659817.

charged, we will name them. And we will name them, and in a culture that respects shame, there should be people that are shamed."[21]  Discussing targets for criminal investigation, Martin stated that the Weaponization Working Group's prerogative included "Letitia James."[22]

Beginning in May, prosecutors in the U.S. Attorney's Office for the Eastern District of Virginia probed whether AG James had knowingly made false statements on a loan application in Virginia.[23]  But after five months of a Norfolk grand jury investigation that purportedly "featured interviews with dozens of witnesses," public reporting indicated that "prosecutors in Virginia believe they have not gathered enough evidence to indict Letitia James" for mortgage fraud.[24]

The District's U.S. Attorney, Erik Siebert, had reportedly told senior DOJ officials that investigators found insufficient evidence to bring charges against AG James.[25]  Per reporting of a non-prosecution memo summarizing the state of the case presented to Mr. Siebert in September, the career prosecutors who investigated AG James for possible mortgage violations even "found evidence that would appear to undercut some of the allegations in the indictment of James . . . including the degree to which James personally profited from her purchase of the property."[26]  Further, after the months-long investigation, prosecutors "concluded that any financial benefit derived from her allegedly falsified mortgage would have amounted to approximately $800 in the

---

[21] Glenn Thrush & Alan Feuer, *If Justice Dept. Can't Prosecute Trump's Foes, It Will 'Shame' Them, Official Says*, N.Y. Times (May 21, 2025), https://perma.cc/EY4P-Q3EP.

[22] *See U.S. Attorney Ed Martin Holds News Conference*, *supra* n.20,

[23] Kristen Holmes et al., *DOJ struggles to build mortgage fraud case against Trump adversary Letitia James, sources tell CNN*, CNN (Sept. 17, 2025)

[24] Peter Charalambous et al., *Trump officials pressuring federal prosecutors to bring criminal charges against NY AG Letitia James: Sources*, ABC News (Sept. 17, 2025).

[25] Glenn Thrush et al., *U.S. Attorney Investigating Two Trump Foes Departs Amid Pressure From President*, N.Y. Times (Sept. 19, 2025).

[26] Katherine Faulders et al., *Evidence appears to undercut claims against Letitia James, prosecutors found: Sources*, ABC News (Oct. 23, 2025), https://perma.cc/662U-NSBA.

year she purchased the home, sources said," and "prosecutors found no record of James collecting rent from her niece beyond $1,350 that James reported on her 2020 tax return, which was said to cover the cost of utilities, according to sources familiar with the investigation." *Id.* Prosecutors "also expressed concern that the case could likely not be proven beyond a reasonable doubt because federal mortgage guidelines for a second home do not clearly define occupancy, a key element of the case, according to sources." *Id.* The investigation of AG James in Virginia should have ended there.

### B. With No Evidence of a Crime, the President and DOJ Scramble for AG James' Resignation or Indictment.

With the possibility of charges against AG James waning, on August 8, 2025, AG Bondi tapped Mr. Martin as "Special Attorney for Mortgage Fraud" to probe AG James and Senator Adam Schiff over allegations of mortgage fraud.[27] When asked by reporters about his mission, he stated, "[f]or months DOJ and the FBI have been working on these two cases, *it is my job to stick the landing*."[28] Reporting at the time indicated that Mr. Martin met directly with Mr. Pulte, who sent the criminal referral to DOJ, and that a grand jury in Virginia was already weighing criminal charges against AG James. *Id.*

Mr. Martin took drastic steps to secure an indictment.[29] He skipped the typical DOJ hierarchy and the traditional separation that exists between DOJ and the White House, and brought

---

[27] Ryan J. Reilly, et al., *DOJ investigating N.Y. AG's office and Sen. Adam Schiff*, NBC News (Aug. 8, 2025), https://perma.cc/GUT3-3QVW.

[28] Miranda Devine, *Grand Juries Weighing Criminal Charges For Tish James, Adam Schiff: Sources*, N.Y. Post (Aug. 8, 2025), https://perma.cc/JN7R-HWYX.

[29] Notably, "personal feelings" concerning an individual are an "impermissible consideration" for Department of Justice employees initiating charges. DOJ Justice Manual (JM) 27.260 (*Initiating and Declining Charges—Impermissible Considerations*).

the investigation straight to the President.[30]  On August 12, just four days into his role as "Special Attorney for Mortgage Fraud," Mr. Martin sent AG James' counsel a letter, in which he twice called for her to "resign from office" because, in his view, it "would best serve the 'good of the state and nation'" and "give the people of New York and America more peace than proceeding." Ex. G at 1.  The reference to "proceeding" can only have meant going forward with his investigation and criminal prosecution.  Martin also stated that "[he] would take this as an act of good faith" if she were to resign from office.  *Id.* at 1. The letter contained no search for facts or questions of law, nor did it hide his plain intention: resign from office or face criminal prosecution—all this despite DOJ's firm policies *against* using investigations and prosecutorial power for achieving political ends such as forcing a public official to resign.[31]  And on that same day, Mr. Martin visited, brought a reporter to and posed for photographs outside of AG James' home.  Again disregarding DOJ policies,[32] he posted the photographs on his social media.  *See* Ex. B at No. 17.

---

[30] *See* Feinberg, *Trump ally probing rivals' 'mortgage fraud' speaks directly with the president - and skips typical DOJ hierarchy*, *supra* n.18.

[31] JM 1-8.600 - Communication with the White House ("The Assistant Attorneys General, the United States Attorneys, the heads of the investigative agencies, and their subordinates have the primary responsibility to initiate and supervise law enforcement investigations and cases. In order to insulate them from inappropriate influences, initial communications between the Department and the White House concerning pending or contemplated law enforcement investigations or cases will involve only the Attorney General or Deputy Attorney General, and the Counsel or a Deputy Counsel to the President (or the President or Vice President)").

[32] *See, e.g.*, JM 9-85.500 (prohibiting federal prosecutors from taking any investigative step or action for the purpose of giving an advantage or disadvantage to any candidate or political party); Criminal Justice Standards for the Prosecution Function, Standard 3-1.6(a) (Am. Bar. Ass'n 2017) ("A prosecutor should not use other improper considerations, such as partisan or political or personal considerations, in exercising prosecutorial discretion.").

In September, articles emerged indicating that Mr. Siebert was "fac[ing] pressure to indict James from Ed Martin . . . and Bill Pulte."[33]  This pressure also came, according to multiple sources, as President Trump had "privately and angrily complained about James even months into taking office."[34]  When career prosecutors initially "declined to indict James, Pulte encouraged President Trump to fire [U.S. Attorney] Erik Siebert, . . . and replace him with a prosecutor who would be willing to bring charges against James."[35]  Just two days later, speaking from the Oval Office, the President called for Mr. Siebert's ouster.[36]  When asked if he would fire Mr. Siebert, President Trump responded, "Yeah, I want him out" and told reporters AG James was "very guilty of something." *Id.*  Mr. Siebert resigned a few hours later.  Notably, earlier that day, reports indicate an internal debate took place over whether to remove Mr. Siebert—with key DOJ officials, including AG Bondi and Deputy Attorney General Todd Blanche, and certain congressional Republicans arguing to retain the Trump-appointed Virginia prosecutor.  *Id.*  But it did not sway President Trump and others like Mr. Pulte, "who had urged that he be fired and replaced with a prosecutor who would push the cases [against AG James and Mr. Schiff] forward."  *Id.*

Undeterred by the absence of evidence, President Trump continued to insist on an indictment.  One day after removing Mr. Siebert, in a social media post (which reads like it was intended to be a private message to Ms. Bondi), President Trump posted online:

---

[33] Kristen Holmes et al., *DOJ struggles to build mortgage fraud case against Trump adversary Letitia James, sources tell CNN*, CNN (Sept. 17, 2025).

[34] *See id.*

[35] Peter Charalambous et al., *Trump officials pressuring federal prosecutors to bring criminal charges against NY AG Letitia James: Sources*, ABC News (Sept. 17, 2025).

[36] Glenn Thrush et al., *U.S. Attorney Investigating Two Trump Foes Departs Amid Pressure From President*, N.Y. Times (Sept. 19, 2025) (President Trump: "When I saw that he got two senators, two gentlemen that are bad news as far as I'm concerned — when I saw that he got approved by those two men, I said, pull it, because he can't be any good.").

> Pam: I have reviewed over 30 statements and posts saying that, essentially, "same old story as last time, all talk, no action. Nothing is being done. What about Comey, Adam "Shifty" Schiff, Leticia??? They're all guilty as hell, but nothing is going to be done." Then we almost put in a Democrat supported U.S. Attorney, in Virginia, with a really bad Republican past. A Woke RINO, who was never going to do his job. That's why two of the worst Dem Senators PUSHED him so hard. He even lied to the media and said he quit, and that we had no case. No, I fired him, and there is a GREAT CASE, and many lawyers, and legal pundits, say so. Lindsey Halligan is a really good lawyer, and likes you, a lot. We can't delay any longer, it's killing our reputation and credibility. They impeached me twice, and indicted me (5 times!), OVER NOTHING. JUSTICE MUST BE SERVED, NOW!!! President DJT

Ex. A. at No. 346. The President's directive was clear: prosecute AG James and do it quickly.

Asked that same evening about his message for AG Bondi, President Trump declared, "I just want people to act. They have to act and we want to act fast. . . . If they are guilty, or if they should be charged, they should be charged. And we have to do it now."[37] Asked the following day about DOJ leadership indicting AG James, the President responded, "I look at the facts like everybody else. You read the facts, and to me, she looks terrible, she looks like she's very guilty, but that's going to be up to the DOJ."[38]

AG Bondi, for her part, issued ominous warnings in statements on *Fox News*'s The Hannity Show, in a response to a question about how "does somebody like Letitia James, just one example, run on a platform that she's gonna go after one man, one family, and one organization, the way she did, and target them the way she did. How is that possible?" *See* Ex. B at No. 13. AG Bondi responded:

> Well they thought they got away with it because they thought that they would defeat Donald Trump at the polls and they didn't. He won by an overwhelming majority. he is in office now, we have made it crystal clear the weaponization of this country has

---

[37] Joe DePaolo, *'We Have to Act Fast!' Trump Promptly Doubles Down On Pressuring Pam Bondi to Go After His Political Enemies*, Mediaite (Sept. 21, 2025), https://perma.cc/EZJ4-X4VR; *see also* Alan Feuer et al., *Trump Demands That Bondi Move 'Now' to Prosecute Foes*, N.Y. Times (Sept. 20, 2025), https://perma.cc/FC9R-U8TK.

[38] *Trump ignites pressure campaign on Pam Bondi to target rivals*, The Hill (Sept. 22, 2025), https://perma.cc/2GNA-EJ3H.

ended. Everything is on the table, we are investigating all the weaponization, all the wrongdoing that has happened. We are issuing subpoenas, we are looking at things around this country. People have to be held accountable. No one, Sean, is above the law. No one is above the law. And you will be held accountable.

*Id.* And, during a Senate oversight hearing, when Senator Amy Klobuchar asked AG Bondi about the President's post directing her to charge AG James and the President's other political adversaries, not only did she not refute the charge, she seemingly confirmed it:

President trump is the most transparent president in American history, and I don't think he said anything that he hasn't said for years. *Id.*

### C. President Trump "Appoints" Lindsey Halligan to Charge Political Adversaries.

One hour after issuing his directive to AG Bondi, President Trump announced his "recommendation" for a new U.S. Attorney for EDVA "to get things moving"—Lindsey Halligan, his former personal attorney with no prior prosecutorial experience. Ex. A. at No. 347. In his social media post appointing her to this role, he called Ms. Halligan a "tough" and "loyal attorney," including "in the winning fight against the Weaponization of our Justice System" by "the Radical Left Democrats." *Id.* at No. 348. The mission he gave the person he sought to make U.S. Attorney[39] was clear—go after his political foes, including FBI Director James Comey and AG James.

As he increased pressure on DOJ leadership to bring criminal charges, President Trump continued his public attacks against AG James, calling her "SCUM" and "a Complete and Total Disaster" in a post on October 4, and demanding her removal from office because of "her WITCH HUNT" against him and others. White House Press Secretary Karoline Leavitt even confirmed President Trump's motives were personal: he wanted to hold AG James and others "accountab[le]"

---

[39] As described in AG James' Motion for Disqualification of Ms. Halligan, her appointment was improper and highly irregular. *See* DE-22.

because they "campaigned on trying to put him in jail" and "tried to ruin his life and ruin his businesses."[40] After the indictment of Mr. Comey, the President even told reporters:

> It's not a list, but I think there will be others. . . . It's about justice. … It's also about the fact that you can't let this go on. They are sick, radical-left people, and they can't get away with it . . . . Comey was one of the people, he wasn't the biggest.[41]

### D. Career Prosecutors Conclude There is No Probable Cause to Bring Charges and are Fired.

By early October, despite intense, near constant pressure from President Trump, a top career prosecutor in Norfolk's U.S. Attorney's Office, Elizabeth Yusi, who had been part of the team leading the months-long investigation into AG James, informed colleagues she would decline to seek charges against AG James, according to sources, and authored the non-prosecution memo.[42] Ms. Yusi, who oversaw major criminal prosecutions in the Norfolk Office and had been with DOJ since 2007, had "confided to co-workers that she [saw] no probable cause to believe James engaged in mortgage fraud" and intended to present her conclusion to Ms. Halligan, the District's new interim U.S. attorney. *Id.* Ms. Yusi then suffered the same fate as her prior boss a few weeks later: she was fired by Ms. Halligan, along with senior Norfolk prosecutor Kristin Bird, for declining to bring charges. *Id.* Ms. Halligan also removed First Assistant U.S. Attorney Maggie Cleary, who briefly led the Norfolk Office after Mr. Siebert resigned. *Id.*

---

[40] *Trump ignites pressure campaign on Pam Bondi to target rivals*, The Hill (Sept. 22, 2025), https://perma.cc/2GNA-EJ3H.

[41] Brett Samuels, *Trump after Comey indictment: 'I hope there are others'*, The Hill (Sept. 26, 2025), https://perma.cc/7LMC-DJTH.

[42] Carol Leonnig & Ken Dilanian, *Top prosecutor is rejecting Trump pressure to charge New York AG*, MSNBC (Oct. 6, 2025); Katherine Faulders et al., *Evidence appears to undercut claims against Letitia James, prosecutors found: Sources*, ABC News (Oct. 23, 2025), https://perma.cc/662U-NSBA.

### E.  Ms. Halligan Indicts Attorney General James.

Mr. Martin and Ms. Halligan were unphased by the lack of evidence, absence of probable cause, and outspoken objections of experienced DOJ prosecutors. On October 8, just one day before Ms. Halligan went before the grand jury in Alexandria, Martin shared two photos on *X*, one in which he posed with Ms. Halligan and another showing him and Ms. Halligan reviewing documents at a table in his office.  *See* Ex. B. at No. 11. The following day, despite the overwhelming lack of evidence and support from career, experienced prosecutors, Ms. Halligan went before a grand jury in Alexandria, Virginia—not in Norfolk, where grand jurors had heard evidence and witnesses for months—and obtained a two-count indictment, charging AG James with Bank Fraud, in violation of 18 U.S.C. § 1344, and False Statements to a Financial Institution, in violation of 18 U.S.C. § 1014.  *See* D.E. 1.  Ms. Halligan presented the case alone to the Alexandria grand jury and she alone signed the indictment.[43]  Reports indicate that some DOJ leadership were "caught off guard" and had previously viewed the case against AG James "as weak."  *Id.*

### F.  After Indictment, the President and DOJ Officials Confirm Retaliatory Motive.

Executive branch officials unabashedly and immediately admitted that the indictment was payback.  Mr. Martin posted on *X*, "Promises made, Promises kept," Ex. B. at No. 8, and re-posted his Thursday morning image of a bald eagle (his signature image) flying over New York's Brooklyn Bridge—a not-so-subtle reference to AG James' home.  Ex. B. at No. 10.  Alina Habba, another one of the President's personal lawyers and the now disqualified Acting U.S. Attorney for New Jersey, retweeted a post she had made about the NYOAG's civil action against President

---

[43] Kristen Holmes et al., *Lindsey Halligan didn't coordinate NY AG Letitia James indictment with Pam Bondi's DOJ*, CNN (Oct. 10, 2025).

Trump and vowing to serve AG James "humble pie." *Id.* at No. 4. FBI Director Kash Patel posted on *X*, "[t]here simply cannot be, and will not be, different rules for different people. One system of law and order from this FBI." *Id.* at No. 6. AG Bondi also posted on *X*, "[o]ne tier of justice for all Americans." *Id.* at No. 7. And over the next twenty-four hours, President Trump shared several clips on his *Truth Social* account of news programs discussing this indictment, with still images of the segments showing AG James. *See* Ex. A. at Nos. 352–58.

President Trump has not relented in his direct vendetta against and verbal attacks on AG James. Five days ago, in a November 2, 2025, interview with CBS's *60 Minutes*, the President called AG James "a terrible, dishonest person," "a total crook," and "a low-life," and in response to the reporter's question whether this amounts to "political retribution" he declared:

> You know who got indicted, the man you're lookin' at. I got indicted, and I was innocent. And here I am, because I was able to beat all of the nonsense that was thrown at me. I got indicted. . . . *They were after me. I'm lookin' at you now. I'm President of the United States.* I went through numerous indictments and two impeachments. And you tell me that I went after people? These people are dishonest. *See* Ex. A. at 360.

There has been no attempt to hide the President's direct animus towards AG James or his motives for payback and revenge. He blasted them and just reiterated them for the world to hear.

### G. DOJ Subpoenas NYOAG, Another Form of Presidential Revenge.

Not only has President Trump tasked DOJ with going after AG James herself, but DOJ is also being used to go after her office and to burden her ability to serve the people of New York and defend herself against the pending indictment. On August 5, 2025, Acting U.S. Attorney for the Northern District of New York John A. Sarcone III issued two grand jury subpoenas to NYOAG, one seeking documents related to the civil fraud suit against President Trump and his businesses and another seeking materials related to the Office's suit against the NRA. *See In re Grand Jury Subpoenas to the Office of the New York State Attorney General*, 25-mc-00019-LGS, D.E. 44

(Opinion & Order) at 2 (N.D.N.Y. Oct. 31, 2025). Neither subpoena listed an alleged statutory violation anywhere. Media outlets reported that the investigation "focused on possible deprivation of rights allegations" (ostensibly those claimed by President Trump) and "came at the direction of Attorney General Pam Bondi" according to "two well-placed sources familiar with the probe."[44]

NYOAG moved to quash the subpoenas on multiple grounds, including that they "(1) were issued to retaliate against actors disfavored by President Trump and his allies -- a theme relevant to active cases across the country; (2) unreasonably infringe on New York's state sovereignty, a matter of strong public interest to the people of New York and (3) are facially invalid because of the Acting U.S. Attorney's allegedly improper appointment -- a question with significant implications for criminal prosecutions within the Northern District, and one currently playing out in several judicial Districts across the country." *In re Grand Jury Subpoenas to the Office of the New York State Attorney General*, 25-mc-00019-LGS, D.E. 44 (Opinion & Order) at 11–12 (N.D.N.Y. Oct. 31, 2025). Furthermore, NYOAG correctly pointed out that the President had previously raised his theories of NYOAG's impropriety in the civil actions—arguments that were resoundingly, repeatedly, rejected.[45] While a decision on the motion to quash is forthcoming, the subpoenas are a transparent abuse of federal law enforcement power by President Trump to further punish AG James and NYOAG.[46]

---

[44] Ashley Oliver et al., *DOJ opens grand jury investigation into Letitia James tied to Trump civil case*, Fox News (Aug. 8, 2025), https://perma.cc/4MV9-6SR8.

[45] *See Trump Org*, 169 N.Y.S.3d at 614; *see also Trump v. James*, 2022 WL 1718951, at *12–13 (N.D.N.Y. May 27, 2022); *People v. Trump*, 237 N.Y.S.3d 443, 446 (App Div. 2025) (Moulton, J., concurring) (agreeing "that the Attorney General acted well within her lawful power in bringing this action, and that she vindicated a public interest in doing so.").

[46] In an opinion unsealing the matter, the court acknowledged that "NYOAG's motion to quash *raises significant constitutional and procedural concerns* that implicate the public's interest in government transparency and accountability." *Id.* at 10 (emphasis added).

## ARGUMENT

This indictment is unconstitutional.  The Fifth Amendment prohibits the Executive from abridging free speech, due process, and equal protection by undertaking vindictive or selective prosecutions.  Undeterred, President Trump ordered, AG Bondi and Mr. Martin directed, and Ms. Halligan complied to bring these charges to punish AG James for exercising her constitutional rights and fulfilling her statutory duties.  Because this prosecution violates the Constitution, the Government's indictment must be dismissed with prejudice.

**I.    The Indictment Should Be Dismissed as Vindictive Prosecution.**

"[T]he great majority of prosecutors will be faithful to their duty," *Newton v. Rumery*, 480 U.S. 386, 397 (1987) (plurality opinion), but "occasional misuse" of prosecutorial power "is by no means inconceivable."  *United States v. Adams*, 870 F.2d 1140, 1145 (6th Cir. 1989) (internal quotations omitted).  Although a prosecutors' charging decisions are entitled to great deference under the presumption of regularity, they are still bound by the Fifth Amendment.[47]  To charge a

---

[47] The foundations of the presumption of regularity, at least in the context of this case, have been greatly corroded by the Department of Justice's clear directives that prosecutors must fall in line with *any* command from the White House or risk losing their jobs. *See* Attorney General Pamela Bondi, General Policy Regarding Zealous Advocacy on Behalf of the United States, Department of Justice (February 5, 2025) ("The discretion afforded Department attorneys entrusted with those responsibilities does not include latitude to substitute personal political views or judgments for those that prevailed in the election. . . . It is therefore the policy of the Department of Justice that any attorney who because of their personal political views or judgments declines to sign a brief or appear in court, refuses to advance good-faith arguments on behalf of the Administration, or otherwise delays or impedes the Department's mission will be subject to discipline and potentially termination, consistent with applicable law."); *see also*, Brittny Mejia et al., *L.A. federal prosecutors resign over plea deal for convicted sheriff's deputy, sources say*, The L.A. Times (May 3, 3035), https://perma.cc/TAJ6-5FAM; Santul Nerkar & Jonah E. Bromwich, *Trump-Driven Chaos Comes to U.S. Attorney's Offices in Waves*, N.Y. Times (Jul. 18, 2025), https://perma.cc/UM4S-VWP5; Tom Driesbach, *Why a DOJ prosecutor resigned, telling coworkers and bosses 'you serve no man,'* NPR, (Mar. 20, 2025), https://perma.cc/P3V3-DUEZ; James Bickerton, *Trump DOJ Resignations: List of Prosecutors and Officials Quitting in Protest, Newsweek* (Feb. 15, 2025), https://perma.cc/4H8F-9FKM; Reuters, *Two Thirds of DoJ unit*

person "because he has done what the law plainly allows him to do is a due process violation of the most basic sort." *See Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978) (citation omitted) (contrasting unconstitutional prosecutorial retaliation with constitutional plea-bargaining tactics). And "while an individual certainly may be penalized for violating the law, he just as certainly may not be punished for exercising a protected statutory or constitutional right," such as engaging in protected speech or statutory duties. *United States v. Goodwin*, 457 U.S. 368, 372 (1982); *see Hartman v. Moore*, 547 U.S. 250, 256 (2006) ("[T]he First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out.") (citation omitted). Such vindictive prosecutions have "no place in our system of justice." *United States v. Ball*, 18 F.4th 445, 454 (4th Cir. 2021).

An indictment must be dismissed for vindictive prosecution if "(1) the prosecutor acted with genuine animus toward the defendant and (2) the defendant would not have been prosecuted but for that animus." *United States v. Wilson*, 262 F.3d 305, 314 (4th Cir. 2001) (citations omitted). For the first prong, a prosecutor has a vindictive motive when she harbors genuine animus or "was prevailed upon to bring the charges by another with animus such that the prosecutor could be considered a 'stalking horse.'" *United States v. Sanders*, 211 F.3d 711, 717 (2d Cir. 2000) (quoting *United States v. Koh*, 199 F.3d 632, 640 (2d Cir. 1999)). "Genuine animus" includes animus triggered by the exercise of "a protected statutory or constitutional right." *See Goodwin*, 457 U.S. 368, 372 (1982); *Wilson*, 262 F.3d at 315. For the second prong, the defendant must show that she "would not have been prosecuted . . . but for the vindictive motive" of the prosecutor or her superiors. *Wilson*, 262 F.3d at 317 (emphasis omitted).

---

*defending Trump policies in court have quit*, The Guardian (Jul. 15, 2025), https://perma.cc/8L4R-EKM5.

## A. Direct Evidence Establishes That the Government Vindictively Prosecuted Attorney General James.

Though direct evidence of genuine animus is generally "rare," President Trump's conduct in this case is the exception to that rule. *Goodwin*, 457 U.S. at 384 n.19 (stating that in rare cases, the presumption of regularity may be overcome by direct evidence of vindictiveness). Prosecutors seldom provide defendants with a "smoking gun" that spells out their improper motivations, particularly in light of the rules discouraging disclosure of information regarding ongoing investigations.[48] But here, the Executive has shouted six years of direct evidence of genuine animus through a megaphone.

The quintessential forms of direct evidence of genuine animus are statements and threats from prosecutors and Executive Branch officials expressing improper motivations for bringing charges. *See, e.g.*, *United States v. Gallegos-Curiel*, 681 F.2d 1164, 1168 (9th Cir. 1982) (including "an expressed hostility or threat to the defendant for having exercised a constitutional right" in evidence for actual vindictiveness); *United States v. Abrego-Garcia*, No. 3:25-cr-00115, 2025 WL 2814712, at *4 (M.D. Tenn. Oct. 3, 2025) (examining statements by Executive officials to establish actual vindictiveness); *United States v. Johnson*, 221 F.3d 83, 94 (2d Cir. 2000) (listing "evidence of a statement by the prosecutor" as direct evidence of actual vindictiveness); *United States v. P.H.E. Inc.*, 965 F.2d 848 (10th Cir. 1992) (characterizing as direct evidence a letter from Utah U.S. Attorney to the United States Attorney General regarding a strategy of multiple prosecutions to impose financial strain on certain businesses); *Dixon v. District of Columbia*, 394 F.2d 966, 968 (D.C. Cir. 1968) (finding that the government's admission of bringing charges because an

---

[48] *See, e.g.*, Fed. R. Crim. P. 6(e); 28 C.F.R. § 50.2; ABA Model Rules 3.8 and 3.6.

individual made a formal complaint against police officers constituted direct evidence of vindictive prosecution).

For more than six years, President Trump's animus towards AG James has taken center stage on his social media, speeches, and interviews. In connection with NYOAG's civil case and her campaign speech, he has called her "corrupt," "crooked," "disgusting," "evil," "racist," "incompetent," "weak," "criminal," "scum," and "a monster." *See, e.g.*, Ex. A at Nos. 12–13, 24, 28–29, 109, 121, 194, 342, 349, 358. The President, AG Bondi, and Mr. Martin, have called for investigations, impeachment, and prosecution. Ex. A at Nos. 30, 62–63, 61, 69, 71, 73–75, 77, 80–82, 91,101, 135, 139, 148, 156, 166, 175, 178, 195, 203, 211–12, 215, 231, 235–41, 249–50, 256, 261, 266–67, 270–71, 293, 304, 305, 316, 320–26; Ex. B at Nos. 13, 16, 22, 25. And they threatened AG James with criminal charges if she did not resign from office. *See* Ex. G. These attacks provide direct, objective evidence that President Trump and those carrying out his orders in DOJ harbor genuine animus towards AG James, as a result of personal bias, for her exercise of her First Amendment rights, and for carrying out her statutory duties as New York Attorney General, and that prosecution occurred solely because of that animus.

### 1. Attorney General James' exercise of her statutory duties and constitutional rights triggered the Executive's genuine animus.

The origins of the President's animus are no secret. After a three-year investigation, triggered by the congressional testimony of Micheal Cohen in February 2019, the NYOAG filed and won a civil action against President Trump and his affiliates, establishing that the President had defrauded his lenders and insurers by substantially inflating the value of his assets.[49] President Trump took the NYOAG's investigation and civil action personally. He repeatedly claimed that

---

[49] *People v. Trump*, Index No. 452564/2022, Decision & Order (N.Y. Sup. Ct. Feb. 16, 2024), available at https://ag.ny.gov/sites/default/files/decisions/trump-decision.pdf.

it was a hoax, a conspiracy to remove him from office, a witch hunt, and an attempt by AG James—in collaboration with a variety of the President's perceived political enemies—to interfere with the 2020 and 2024 presidential elections.  *See, e.g.*, Ex. A. at Nos. 99–103, 128, 140, 149, 159–161, 168, 180, 209.  Each time the President and his allies disclaimed the President's own guilt in the civil action, they accused AG James of fraud, collusion, prosecutorial misconduct, and election interference. *See id.* at Nos. 129, 151, 160, 193, 208, 212.

The attacks escalated with her success.  Standing outside of the courtroom at the end of the civil trial, the President told reporters that AG James "should be criminally liable for this."  Ex. A. at No. 231.  When the Court ruled against him, he reposted further calls for her prosecution.  *See* Ex. A at 231–41.  AG Bondi, then acting as the President's personal lawyer, asserted that AG James "can't get away with this" and "needs to be looked at."  Ex. B. at No. 25.  She carried out her out words as the President's Attorney General.  And at rallies in 2023 and 2024, the President repeated his promise to "direct a completely overhauled DOJ to investigate every radical out of control prosecutor in America for their illegal, racist, and reverse enforcement of the law."  Ex. A at ¶¶ 249, 261, 270, 305.

The President's and his allies' actions further prove the source of their animus.  On her first day as U.S. Attorney General, AG Bondi established the "Weaponization Working Group," directing the Department of Justice to examine "Federal cooperation with the weaponization by the Manhattan District Attorney Alvin Bragg, New York Attorney General Letitia James, their respective staffs, and other New York officials *to target President Trump, his family, and his businesses.*"  Ex. C at 2.  The memo signaled that her first post-inauguration step would be deploying the levers of federal prosecutorial enforcement to carry out President Trump's repeated suggestions that he would pursue those he perceives to be his enemies.

The President's animus also arises from AG James' exercise of her constitutionally-protected campaign speech. To support his claims of a "witch hunt," the President immediately zeroed in on AG James' speech during her successful campaign for New York Attorney General. During the campaign, AG James criticized and challenged President Trump.[50] She drew attention to lawsuits and investigations into the potentially unlawful activities of the President himself, his businesses, and allies.[51] AG James campaigned on ensuring that the President's conduct would be fully investigated if she were elected.[52] From then on, President Trump and his allies used her

---

[50] See Trump v. James, No. 21-cv-1352, 2022 WL 1718951, at *2 (N.D.N.Y. May 27, 2022) (detailing AG James' campaign statements against President Trump).

[51] At the time of AG James' campaign, her predecessor, Attorney General Barbara Underwood, had already instituted an investigation into the Trump Foundation. The Attorneys General of the District of Columbia and Maryland had filed suit against President Trump for alleged violations of the emoluments clause. See District of Columbia v. Trump, No. 8:17-cv-01596, ECF No. 1 (D. Md. June 12, 2017). And two New York Times investigations had uncovered relevant suspicious activity. See David Barstow et al., Trump Engaged in Suspect Tax Schemes as He Reaped Riches From His Father, N.Y. Times (Oct. 2, 2018), https://www.nytimes.com/interactive/2018/10/02/us/politics/donald-trump-tax-schemes-fred-trump.html; Charles V. Bagli, A Trump Empire Built on Inside Connections and $885 Million in Tax Breaks, N.Y. Times (Sept. 17, 2016), https://www.nytimes.com/2016/09/18/nyregion/donald-trump-tax-breaks-real-estate.html.

[52] AG James does not dispute that the President's verbal attacks on her during his campaign were protected by the First Amendment. And, just as AG James points to the President's campaign statements in her motion here, the President also raised her campaign statements to claim that her civil enforcement actions were improperly motivated. The key difference—and the reason why the President lost every single time he claimed that AG James' investigations and enforcement actions were politically motivated—is that AG James' statements, investigations, and civil action were triggered by credible sworn testimony, bolstered by an intensive, three-year investigation, and focused on the exact type of high-dollar fraud that the NYOAG commonly investigated—not the President's lawful exercise of his constitutional and statutory rights. See Trump v. James, No. 22-cv-81780, ECF No. 14 (M.D. Fla. Dec. 21, 2022) (noting that the President's lawsuit against AG James under 28 U.S.C. § 1983, which alleged a violation of his First and Fourteenth Amendment Rights, had "all the telltale signs of being both vexatious and frivolous."); Trump, 2022 WL 1718951 at *12 n.13 ("[President Trump's] assertions that [AG James] conducted a 'baseless fishing expedition' and 'knowingly advanced claims that were unwarranted under existing law,' are wholly unsupported.").

campaign speech as a basis to challenge her fitness for office and to call for her prosecution. *See, e.g.*, Ex. A at Nos. 93, 125, 152, 227, 272, 320.

But "prosecutorial decisions must not be made in retaliation against defendants for exercising their legal rights." *Wilson*, 262 F.3d at 315. AG James' civil action against the President and her campaign criticisms against him are protected by statute and the First Amendment. The President's use of the criminal justice system to punish her for these protected activities constitutes vindictive prosecution, in violation of AG James' Fifth Amendment rights.

As *every* New York court faced with this question has found, AG James lawfully instituted investigations and proceedings pursuant to her statutory mandate as New York Attorney General.[53] In the words of the New York Superior Court, "[f]or [NYOAG] not to have investigated" President Trump after incriminating testimony about his conduct by one of his former associates "would have been a blatant dereliction of duty." *Trump*, 2022 WL 489625, at *5. And in bringing claims after her years-long investigation, AG James fulfilled her duty to the people of New York in "vindicating the state's sovereign interest in enforcing its legal code – including its civil legal code – within its jurisdiction." *People v. Trump*, 192 N.Y.S.3d 95, 97–98 (App. Div. 2023). In retaliating and vilifying the New York Attorney General for bringing charges within her mandate,

---

[53] *People v. Trump Org., Inc.*, 452564/2022, No. 457 at *3 (N.Y. Sup. Ct. Jan. 6, 2023) ("Scattered throughout defendants five motions to dismiss are arguments that (1) plaintiff does not have capacity to sue, (2) plaintiff does not have standing to sue, (3) the Mazars disclaimers insulate defendants; and the instant case is a "witch hunt." The first three arguments were borderline frivolous even the first time defendants made them. . . . Finally, this Court (and at least 2 others) has soundly rejected the "witch hunt" argument."); *see also, e.g.*, *Trump Org.*, 169 N.Y.S.3d at 612. AG James brought these proceedings pursuant to New York Executive Law § 63(12), which states that "[w]henever any person shall engage in repeated fraudulent or illegal acts or otherwise demonstrate persistent fraud or illegality in the carrying on, conducting or transaction of business, the attorney general may apply . . . for an order enjoining the continuance of such business activity or of any fraudulent or illegal acts, directing restitution and damages and, in an appropriate case, cancelling any certificate filed under [N.Y. Gen. Bus. Law § 130]." *See id.*

the President and the Department of Justice target the sovereignty of New York, not just AG James. A state's power to police unlawful activity within its own borders is the time-honored core of its sovereign authority. *Printz v. United States*, 521 U.S. 898, 928 (1997) ("It is an essential attribute of the States' retained sovereignty that they remain independent and autonomous within their proper sphere of authority.").  And retaliating against AG James sets a precedent for chilling the law enforcement actions of other states, lest their own elected officials be subject to DOJ targeting.

Moreover, the First Amendment "has its fullest and most urgent application precisely to the conduct of campaigns for political office," *Monitor Patriot Co. v. Roy*, 401 U.S. 265, 272 (1971), and AG James' campaign statements and promises are protected speech.  *See Garten Trucking LC v. Nat'l Lab. Rels. Bd.*, 139 F.4th 269, 277 (4th Cir. 2025) (noting that the First Amendment "exists in large part to protect political speech and preserve the sanctity of public discourse.").  For the President to target AG James based on her campaign criticisms and promises is the exact type of retaliation against protected activities that the vindictive prosecution doctrine seeks to protect against.  *P.H.E.*, 965 F.2d at 853 ("[A] prosecution motivated by a desire to discourage expression protected by the First Amendment is barred and must be enjoined or dismissed, irrespective of whether the challenged action could possibly be found to be unlawful.").

The spree of venomous statements and actions against AG James demonstrate that the President and DOJ officials envisioned AG James' prosecution as payback for his own indictments and for her criticism of the President during her campaign.  They cannot be relegated to statements of mere opinion or as condemnations of her alleged mortgage fraud.  The President and his allies have called for AG James' prosecution for years, more fully evidenced by AG Bondi's statement to the Senate Oversight Committee in response to a question about the President's post directing her to charge AG James: "I don't think he said anything that he hasn't said for years."  *See* Ex. B.

29

at No. 14.  No doubt, the President has been remarkably consistent in his statements about AG James—even after the criminal referral from Mr. Pulte, he continued to attack AG James about the NYOAG's civil action and the campaign speech.  Ex. A. at No. 341–44, 350.  And just this week, during an interview on 60 Minutes, in a response to a question asking whether AG James, among others, was indicted as "political retribution," the President reiterated that the real victim of political persecution was himself, and that AG James had targeted him with her civil action.  *See* Ex. A at 360.

The President's and his allies' own words and actions reveal the throughline between their animus and AG James' exercise of her protected statutory and constitutional rights and establish the unconstitutional motivation underlying the prosecution.

### 2.  The President, AG Bondi, and Mr. Martin's genuine animus is imputed into Ms. Halligan's charging decisions.

Ms. Halligan's comparative silence on these issues is immaterial where the President and her direct superiors at the Department of Justice used her as a "stalking horse" for retaliation.  *Koh*, 199 F.3d at 640 (citation omitted) (discussing requirements for imputation of animus from separate agency).

Vindictive prosecution does not require Ms. Halligan herself to have articulated or harbor her own genuine animus towards AG James where the President and Ms. Halligan's superiors in DOJ directed her to indict AG James and effectively conditioned her purported appointment as U.S. Attorney on her willingness to bring these charges.  *See United States v. Monsoor*, 77 F.3d 1031, 1035 (7th Cir. 1996) (explaining that animus may be "imputed to federal prosecutors" by showing that an external force "in some way prevailed upon the prosecutor in making the decision to seek an indictment."); *Adams*, 870 F.2d at 1140; *P.H.E*, 965 F.2d at 860.

The President repeatedly directed the Attorney General and DOJ to bring charges against

AG James, going so far as to post a directive to AG Bondi on social media.  Ex. A at No. 346.  Mr. Martin commandeered the investigation in mid-August 2025, after AG Bondi appointed him "Special Attorney for Mortgage Fraud."  At a press conference the following week, Mr. Martin announced that he would root out opponents, name and shame them, and "target . . . Letitia James."[54]  That same day, he sent a letter to AG James' counsel, threatening her with charges if she did not resign from office.  *See* Ex. G.  Mr. Martin even "staked out" AG James' Brooklyn, New York home by posing outside it for a photo-op in the *New York Post*, claiming later that as a "prosecutor," he wanted to "lay eyes on it."[55]  Reports indicate that he exercised considerable influence to ensure that Ms. Halligan brought the charges, and met with her the day before she sought charges from a grand jury in Alexandria.[56]  And on the day of the indictment, October 9, Mr. Martin posted the cartoonish image of a symbol of himself—an eagle—flying over the Brooklyn Bridge.  Ex. B at No. 10.  AG Bondi designated AG James as a priority for DOJ investigation, supervised Mr. Martin and Ms. Halligan, and has even gone as far as to attempt to "ratify" after-the-fact Ms. Halligan's charging decisions in response to motions to disqualify Ms. Halligan for her illegal appointment.  *See* D.E. 43-1.  The President and DOJ cannot hide behind Ms. Halligan to disguise their hand in AG James' prosecution.

The circumstances here are, at a minimum, equivalent to the other instances where courts have found direct evidence of genuine animus.  In *P.H.E.*, for example, letters between the Utah U.S. Attorney and the United States Attorney General set in motion a coordinated, nationwide effort to conduct multiple prosecutions against businesses "that sold obscene materials," and run

---

[54] *See U.S. Attorney Ed Martin Holds News Conference*, *supra* n.20.

[55] Ashley Oliver et al., *Letitia James' lawyer blasts DOJ official's 'bizarre' 'stunt' at New York AG's house*, Fox News (Aug. 20, 2025), https://perma.cc/Z99M-6YYS.

[56] Katelyn Polantz et al., *The weapon of justice: Ed Martin's influence at DOJ*, CNN Politics (Oct. 30, 2025), https://perma.cc/KBG8-LCN6.

them out of business. 965 F.2d at 859. The Attorney General created a "National Obscenity Enforcement Unit" to oversee the prosecution strategy and implemented a significant push to target certain companies based on obscenity, and one of the prosecutors in the criminal case at issue had taken a leading, cross-jurisdictional role in the creation and enforcement of the strategy. The Tenth Circuit found that defendants had met "their burden of showing that the indictment is the tainted fruit of a prosecutorial attempt to curtail [their] future First Amendment protected speech," despite the involvement of a neutral prosecutor, and remanded for consideration of causation. The Tenth Circuit's holding translates directly to the criminal charges here: "underlings who knowingly participate in an unconstitutional scheme to conduct an unlawful criminal prosecution" cannot "cure the constitutional taint by disingenuously presenting the fruits of their unlawful activities to their superiors on a 'silver platter.'" *P.H.E.*, 965 F.2d at 859; *see also*, *United States v. Aviv*, 923 F.Supp. 35, 37 (S.D.N.Y. Apr. 22, 1996) (finding "unusually strong" case for imputed animus where federal agents called defendant "dishonest, unreliable and unpatriotic, asked for information regarding all matters on which [defendant] was doing work" and "suggested that [the agency] terminate its relationship with him.").

This indictment is only "the most recent step" in a six-year vendetta against AG James, and it comes on the heels of threats by DOJ officials attempting to force AG James to resign from office. *See id.* Even if Ms. Halligan were a neutral party in bringing this indictment, the involvement, direction, and unconstitutional conduct of the President, AG Bondi, and Mr. Martin stains these charges forever.

### B. Objective Evidence Establishes That AG James Would Not Have Been Prosecuted But-For President Trump and His Officials' Genuine Animus.

Direct, objective evidence also establishes that the President's vendetta is the but-for cause of this indictment. The question of causation here "is directed to determining how the decision to

prosecute was actually made in the case under consideration. The court may not permit vindictiveness to be hidden behind procedural cosmetics." *P.H.E., Inc.*, 965 F.2d at 858.

Statements and actions by the President and his allies at DOJ make clear that their animus is the "but for" cause of AG James' prosecution. As soon as the President inherited the immense powers of the executive branch, he began using those powers to exact retribution against AG James. Less than a month after taking office, the President announced that he had stripped AG James of her security clearance, referencing her "partisan persecutions" of him. Ex. A. at No. 330. Mr. Pulte, defying the roles, rules, and structures of his agency, *see supra*, n.20, used his power to target the President's perceived enemies. Mr. Martin, with no regard to DOJ rules, *see supra*, n.31, even resorted to threatening AG James with future criminal charges to force her to resign, an acceptable victory for the Trump administration if the grand jury failed to charge. And the preceding years of vitriol, attacks, and repeated calls for AG James' resignation and prosecution— all because of AG James' protected campaign speech and civil action against President Trump— are alone substantial objective evidence of but-for causation.

But the President's public refusal to let evidence stand in the way of his retribution is the crux of the causation here. After a five-month grand jury investigation that reportedly featured "interviews with dozens of witnesses," the career prosecutors in the Eastern District of Virginia, and Mr. Siebert himself, declined to indict AG James for mortgage fraud.[57] Any possibility of charging AG James in Virginia, based on proper considerations, should have ended with the conclusion from these career prosecutors that there was no probable cause.

---

[57] Peter Charalambous et al., *Trump officials pressuring federal prosecutors to bring criminal charges against NY AG Letitia James: Sources*, ABC News (Sept. 17, 2025); Kristen Holmes et al., *DOJ struggles to build mortgage fraud case against Trump adversary Letitia James, sources tell CNN*, CNN (Sept. 17, 2025).

Instead of accepting the lack of evidence supporting his accusations, President Trump publicly decried a different impediment: Mr. Siebert himself. The President stated that he wanted Mr. Siebert "out" of as U.S. Attorney and ordered the Attorney General to keep the prosecutions against AG James and others moving, posting on social media that "JUSTICE MUST BE SERVED, NOW." Ex. A at No. 346. An hour later, President Trump posted that AG Bondi "needs a tough prosecutor in the Eastern District of Virginia, like my recommendation, Lindsey Halligan*, to get things moving*." *Id.* at No. 347. Ms. Halligan, who was formerly President Trump's personal attorney, plainly understood that she was appointed to charge AG James. Given what happened to the others in the office, she would not have disobeyed that directive.

The lightweight indictment here shows further evidence that animus—not evidence— motivates these charges. The President shows them the person, and DOJ finds him the "crime."

## II. The Indictment Must Be Dismissed as Selective Prosecution, in Violation of Equal Protection.

The Government's charges against AG James also constitute unconstitutional selective prosecution, in violation of her Fifth Amendment rights. Prosecutors have broad discretion to make judgment calls about the charges they bring, but "selectivity in the enforcement of criminal laws is ... subject to constitutional constraints." *United States v. Batchelder,* 442 U.S. 114, 125 (1979). "[J]ust as discrimination on the basis of religion or race is forbidden by the Constitution, so is discrimination on the basis of the exercise of protected First Amendment activities, whether done as an individual or, as in this case, as a member of a group unpopular with the government." *United States v. Falk*, 479 F.2d 616, 620 (7th Cir. 1973). Equal protection principles prohibit charging decisions that are "'deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification,' including the exercise of protected statutory and constitutional rights." *Wayte v. United States*, 470 U.S. 598, 608 (1985) (quoting *Bordenkircher*,

34

434 U.S. at 364); *see also United States v. Haggerty*, 528 F. Supp. 1286, 1292 (D. Colo. 1981) (finding selective prosecution based on *political affiliations*).[58]

While the burden on the defendant to demonstrate selective prosecution "is high," *United States v. Venable*, 666 F.3d 893, 900 (4th Cir. 2012), *as amended* (Feb. 15, 2012), it is not insurmountable. A defendant must provide clear evidence that the prosecution "had a discriminatory effect and that it was motivated by a discriminatory purpose." *United States v. Armstrong*, 517 U.S. 456, 465 (1996). In other words, a defendant must provide evidence that individuals that are similarly-situated, aside from their protected status or activity, were not prosecuted, and that "that the decision to prosecute was invidious or in bad faith." *United States v. Olvis,* 97 F.3d 739, 743 (4th Cir. 1996).

### A. The Government Has Declined to Investigate and Prosecute Similarly-Situated Individuals.

Clear evidence establishes that the government has neither prosecuted nor even investigated several of the Presidents' officials with virtually the same mortgage or residence issues alleged in the indictment. "Defendants are similarly situated when their circumstances present no distinguishable legitimate prosecutorial factors that might justify making different prosecutorial decisions with respect to them." *Venable*, 666 F.3d at 900–01; *accord United States v. Lewis*, 517 F.3d 20, 27 (1st Cir. 2008) ("A similarly situated offender is one outside the protected class who has committed roughly the same crime under roughly the same circumstances but against whom the law has not been enforced.").

---

[58] While selective prosecution claims most commonly arise from discrimination against an individual for their participation in a protected class, a defendant may also show that they are a "class of one," meaning that they have "been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

While the factors that courts examine range significantly, it is most critical that the individuals engaged in similar conduct, and in similar roles, locations, or in the strength of the evidence against them. *See Olvis*, 97 F.3d at, 744 ( listing factors that may influence prosecutorial decision, including "the strength of the evidence against a particular defendant, the defendant's role in the crime, whether the defendant is being prosecuted by state authorities, the defendant's candor and willingness to plead guilty, the amount of resources required to convict a defendant, the extent of prosecutorial resources, the potential impact of a prosecution on related investigations and prosecutions, and prosecutorial priorities for addressing specific types of illegal conduct."); *United States v. Smith*, 231 F.3d 800, 810 (11th Cir. 2000) (finding that a similarly situated person is "one who engaged in the same type of conduct, which means that the comparator committed the same basic crime in substantially the same manner as the defendant—so that any prosecution of that individual would have the same deterrence value and would be related in the same way to the Government's enforcement priorities and enforcement plan—and against whom the evidence was as strong or stronger than that against the defendant.").

Under these standards, potential comparators for AG James must include individuals that classified a property as a secondary residence, rather than as an investment property, and whose conduct is known to DOJ and/or widely reported, but who were not investigated or charged.  For the closest match, comparators must also be high-profile individuals involved in regulatory or law enforcement roles, as some courts have held that it is permissible for the Government to select a well-known individual for enhanced attention on the trial, and therefore enhanced deterrence for the crime.  *See, e.g.*, *United States v. Hoover*, 727 F.2d 387, 389 (5th Cir. 1984) (finding that likelihood of media attention is a permissible factor to consider in a prosecution); *United States v. Catlett*, 584 F.2d 864, 868 (8th Cir.1978) ("Since the government lacks the means to investigate

36

and prosecute every suspected violation of the tax laws, it makes good sense to prosecute those who will receive, or are likely to receive, the attention of the media.").

On these factors, DOJ has singled out AG James for prosecution while ignoring apparent inconsistencies in the mortgage records of numerous other public officials.  The Government's theory that AG James fraudulently classified a home as a secondary residence for some financial or similar gain, rather than as an investment property, matches the publicly-reported conduct of several high-profile individuals that DOJ has not investigated or charged.  The only meaningful difference between AG James and these individuals is that AG James is a Democratic Attorney General who spoke out against the President, while the others are his allies and cabinet members.

For example, reports indicate that Texas Attorney General Ken Paxton declared three of his ten properties as his primary residence, which receive significantly more favorable mortgage rates than investment properties.[59]  While Mr. Paxton resides in one house in the Dallas, Texas, suburbs, his other two "primary residences" are in Austin.[60]  He claimed a fourth home, in College Station, Texas, as a secondary residence—not a rental property—even though he has listed that house for rent *seven times* since 2015, and there is no indication that Mr. Paxton uses this property.[61]  Public real estate records also reportedly show that Senator Roger Wicker declared primary residences in both Tupelo, Mississippi, and Alexandria, Viriginia—the latter of which falls within Ms. Halligan's jurisdiction.[62]  Scott Bessent, the Secretary of the Treasury, reportedly

---

[59] *See* Pooja Salhotra, *Ken Paxton Claimed Three Houses as His Primary Residence, Records Show*, N.Y. Times (July 24, 2025), https://perma.cc/3EBR-F5HE.

[60] *Report: Texas AG Ken Paxton claimed three homes as primary residence*, CBS News (Jul. 24, 2025), https://perma.cc/2UC8-FYH7.

[61] *See* Salhotra, *Ken Paxton Claimed Three Houses as His Primary Residence, Records Show*, *supra* n.59.

[62] *See* Kate Kelly et al., *Deception? Conflicting Paperwork? Clerical Error? How a Politician's Mortgages Can Get Muddy*, N.Y. Times (Sept. 15, 2025), https://perma.cc/XLL3-BKYG.

agreed to occupy two different vacation houses as his "principal residence" at the same time.[63] And reports indicate that no fewer than three other members of President Trump's cabinet have claimed multiple primary residences.[64]

Substantial media coverage of the inconsistencies in these individuals' mortgages has brought them to the attention of the Trump Administration. And at least one complaint was submitted against Mr. Paxton, Ms. Chavez-DeRemer, Mr. Duffy, and Mr. Zeldin, with no response from the Department of Justice.[65] Rather than respond to these reports with investigations, a spokesman for the White House disclaimed the reporting as "just another hit piece from a left-wing dark money group that constantly attempts to smear President Trump's incredible Cabinet members."[66] In contrast to their repeated accusations against AG James, the President, AG Bondi, and "mortgage-czar" Mr. Martin have been uncharacteristically silent on *all* of these instances of possible fraud.

Each of these individuals are identical to AG James in all relevant respects, and some, according to public reporting, were engaged in even more egregious actions than those alleged in the indictment. They are high-profile politicians, involved in substantially similar conduct, during similar time frames, and with similar levels of press coverage. The remaining factors that typically "play important and legitimate roles in prosecutorial decisions" are inapplicable. The glaring

---

[63] *See* Anthony Cormier & Zachary R. Mider, *Bessent, Like Fed Governor, Made Contradictory Mortgage Pledges*, Bloomberg (Sept. 17, 2025), https://perma.cc/GB6P-4L5J.

[64] *See* Robert Faturechi et al., *Trump Is Accusing Foes With Multiple Mortgages of Fraud. Records Show 3 of His Cabinet Members Have Them.*, ProPublica (Sept. 4, 2025), https://perma.cc/2AA6-CX2Y.

[65] *Request for Investigation of Secretaries Lori Chavez-DeRemer, Sean Duffy, Lee Zeldin, and Texas Attorney General Ken Paxton*, Campaign for Accountability (Sept. 8, 2025), https://perma.cc/5M8E-FRZM.

[66] *See* Faturechi, *Trump Is Accusing Foes With Multiple Mortgages of Fraud. Records Show 3 of His Cabinet Members Have Them.*, *supra* n.64.

difference, and the reason the Trump Administration waved away these reports without further inquiry, is that each of the above individuals did not engage in protected speech and activities criticizing the President.  The prosecution of AG James alone out of this group is clear evidence of discriminatory effect.

### B.  The Charges Against AG James are Invidious and in Bad Faith.

The President and his officials' discriminatory intent in prosecuting AG James is laid out in six years of attacks, animus, and retaliatory actions for her protected speech and activities. "[D]iscriminatory intent implies that the government 'selected or reaffirmed a particular course of action at least in part because of, not merely in spite of, its adverse effects upon an identifiable group.'" *Venable*, 666 F.3d at 903 (quoting *Wayte*, 470 U.S. at 610).  Prosecution due to "the desire to retaliate against defendants for their exercise of rights protected by the First Amendment" is unconstitutionally selective. *United States v. Haggerty*, 528 F. Supp. 1286, 1292 (D. Colo. 1981).

In light of the history of animus and attacks by the President and his allies against AG James, there is no question that the prosecution against AG James was motivated by discriminatory intent.  For example, in the weeks leading up to the indictment, the President posted:

> Corrupt Letitia James is costing New York State Hundreds of Billions of Dollars in lost business. No company or individual wants to be there, knowing that she's the "Attorney General." She is a Complete and Total Disaster, who tried running against Kathy Hochul for Governor, and only got 1% of the Vote in Polls, and QUIT. She then went back to her WITCH HUNT against President Donald J. Trump, and others. Until this "SCUM" is removed from the Attorney General's Office, no company will move to New York, and few companies will be using the New York Stock Exchange, or NASDAQ, for going Public.

> Letitia James, a Corrupt and Incompetent Attorney General who only brought this Case in order to hurt me politically. She is a Trump Deranged Lunatic!

> They are Political Hacks who did everything possible to hurt me as a Candidate. This was an attack by the Biden/Harris Administration on their Political Opponent, ME.

Ex. A at Nos. 341–42, 350.

The circumstances of AG James' indictment parallel the rare cases finding unconstitutional selective prosecution.  In *Falk*, 479 F.2d at 622, for example, the defendant was prosecuted for failing to carry his draft card, despite thousands of other similarly situated registrants who were not conscientious objectors avoiding charges.  The Court, pointing to the host of unprosecuted comparators and the stated purpose of the government to only charge those who intended to exercise their protected right not to carry the draft card, found facts sufficient "to raise a reasonable doubt about the prosecutor's purpose."  *Id.*  So too here.  AG James' possible pool of eligible comparators—high-profile individuals with publicly reported inconsistencies in their mortgage documents—is far smaller than the thousands of draft-eligible young men who did not carry their draft cards.  But the line between the investigated (perceived political foes of the Trump Administration) and the ignored (political allies of the Trump Administration) demonstrates the discriminatory effect of DOJ's charging decisions.  As in *Falk*, DOJ's explanation for these decisions—that it is investigating individuals who "weaponized" the government—is simply another way of saying that it is only targeting the President's political adversaries.

The irregularity of the government's procedures in indicting AG James provides the final puzzle piece of selective prosecution.  Courts frequently find that, where the "government ha[s] followed unusual discretionary procedures in deciding to prosecute," the prosecution is based on an impermissible purpose.  *United States v. Greene*, 697 F.2d 1229, 1236 (5th Cir. 1983); *accord Falk*, 479 F.2d at 621.  From the inception of the investigation by Mr. Pulte, who likely stepped outside the bounds of his power as Director of the FHFA to investigate and refer AG James for prosecution, to the firing of seasoned prosecutors who refused to indict her, the Government has

refused to let any obstacle stand in the way of her prosecution.[67]  The Attorney General has even taken unprecedented steps to maintain the charges against AG James by now designating Ms. Halligan as Special Attorney solely for AG James and Mr. Comey's cases, should her appointment being challenged in separate motions be found invalid.  No other criminal cases in the Eastern District of Virginia received such special treatment.

AG James has provided clear evidence that her indictment had a discriminatory effect and motivation.  The indictment violates her Fifth Amendment rights and must be dismissed.

## III.    The Indictment Must Be Dismissed With Prejudice

As direct and clear evidence shows that AG James was vindictively and selectively prosecuted, the proper remedy is dismissal of the indictment with prejudice.  Both charges brought against AG James are impermissibly tainted by the unconstitutional conduct of the Executive, as the very investigation into her conduct was designed to punish her for the exercise of her constitutional rights.  The evidence supporting the unconstitutionality of this prosecution is extraordinary in the history of vindictive and selective prosecutions.

Even with this extensive record of direct evidence, should this Court find that AG James has not met the specific requirements set out for selective and vindictive prosecution, this Court should still dismiss the indictment with prejudice through the use of its supervisory powers. Federal courts' supervisory powers exist "to implement a remedy for violation of recognized rights, to preserve judicial integrity by ensuring that a conviction rests on appropriate considerations validly before the jury, and finally, as a remedy designed to deter illegal conduct."  *United States v. Hasting*, 461 U.S. 499, 505 (1983).  They "can be utilized whenever the administration of justice is tainted."  *United States v. Banks*, 383 F. Supp. 389, 392 (D.S.D. 1974).  Courts use their

---

[67] *See supra*, n.16.

supervisory powers to dismiss indictments with prejudice where "there is '(1) flagrant misbehavior and (2) substantial prejudice,'" and where there is "'no lesser remedial action' available." *United States v. Bundy*, 968 F.3d 1019, 1031 (9th Cir. 2020). But the prosecution's "conduct need not be so unfair or imprudent as to offend due process before exercise of this supervisory power is appropriate." *Banks*, 383 F. Supp. at 392.

The Government's conduct here has offended the very core of due process and equal protection principles in transforming the Department of Justice into the President's personal agents of revenge. At every stage of the investigation and prosecution of AG James, the Government took unprecedented steps to circumvent traditional, constitutional, and statutory guardrails on prosecutorial and investigative power. This misbehavior has gravely prejudiced AG James, as she was charged for exercising her constitutional and statutory rights and without the benefit of a neutral prosecutor. The only remedy that will vindicate AG James' rights is dismissal with prejudice, as the investigation and the Department of Justice are too tainted with unconstitutional motivation to bring these charges fairly against AG James. *P.H.E.*, 965 F.2d at 859 ("[W]here, as here, a prosecution is premised on the fruits of constitutionally tainted behavior, we cannot permit the prosecution to continue, notwithstanding attempts to launder the taint by presenting the fruits to an independent prosecutor."). With AG Bondi at the helm of the Department of Justice and President Trump in the White House, it would be impossible for new charges to avoid the poison of retributive motive.

## IV.    In the Alternative, Attorney General James is Entitled to Discovery to Further Demonstrate the Illegal Basis for the Charges Against Her.

Should this Court still find that AG James has not yet met the high burden to prove actual vindictive and selective prosecution, the basis for discovery and an evidentiary hearing has been well established. For vindictive prosecution, a defendant is entitled to discovery and an evidentiary

hearing if she provides some "objective evidence tending to show the existence" of vindictiveness, under the above elements. *Wilson*, 262 F.3d at 315. Similarly, for selective prosecution, she need only provide "'some evidence' making a 'credible showing' of both discriminatory effect and discriminatory intent." *United States v. Hare*, 820 F.3d 93, 99 (4th Cir. 2016) (quoting *Olvis,* 97 F.3d at 743). For discriminatory effect, defendants may "produce some evidence that similarly situated defendants . . . could have been prosecuted, but were not." *Armstrong*, 517 U.S. at 469.

Any remaining doubt about the existence of DOJ's possession of material that might go towards establishing AG James' vindictive or selective claims was obviated by the Government's November 4, 2025, filing of its Notice of Reasons for Not Providing Pre-Vindictive/Selective Prosecution Motion Related Discovery. *See* DE-46. The Government's filing states that it "bears no such obligation until a defendant 'overcomes a significant barrier by advancing objective evidence tending to show the existence of prosecutorial misconduct.'" *Id.* at 1 (quoting *Wilson*, 262 F.3d at 315).[68] AG James has exceeded that burden, and more.

---

[68] If the Government did not believe it possessed "vindictive/selective prosecution-related discovery," DE-46 at 4, the Government could have so stated, without filing notice of its intent not to produce such discovery. Yet the November 4 Notice seemingly contradicts what the government has previously suggested, which is that it has in its possession some discovery relevant to the defense's prosecutorial vindictiveness argument that would be produced. *Id.* at 2. The Government started that process of producing such discovery, and on October 30, produced just seven news articles about the James investigation or case. That is all. Then, in a move suggesting the Government found additional items which it *did not* want to reveal or produce, the Notice followed on November 4, suggesting more such discovery exists. Public reporting from the day before also indicated that FHFA's acting inspector general, Joe Allen, was fired from his role on November 3 "after he made efforts to provide key information to prosecutors in [Ms. Halligan's] office, according to four sources. The information *he turned over was constitutionally required*, . . . [or] potentially relevant in discovery." Sarah N. Lynch et al., *Exclusive: Trump ousts watchdog of US housing regulator involved in mortgage probes of his foes, sources say*, Reuters (Nov. 3, 2025), https://perma.cc/56J2-V7VZ (emphasis added). The defense is left guessing at what other prosecutorial vindictiveness discovery exists in the government's hands.

The Government's "Notice of Reasons For Not Providing Pre-Vindictive/Selective Prosecution Motion Related Discovery" also states, defense counsel "intends to request substantial discovery from the Government." DE-26 at 4. As of that filing, defense counsel had *already*

The evidentiary standard for discovery may be high, but AG James has provided six years of consistent statements by the President and his allies expressly explaining their genuine animus towards AG James for the exercise of her constitutional and statutory rights and calling for her prosecution.  She has provided evidence of the President and his officials' retaliatory actions leading up to this prosecution, and the traditions, norms, and rules that they are willing to break in order to bring criminal charges against her.  She has provided evidence that the animus traveled down the chain of command, from the President, AG Bondi, and Mr. Martin, to Ms. Halligan, such that Ms. Halligan's charging decision was made at their direction.  And she has shown that other similarly situated individuals, all allies of the President, have not been charged—and the special treatment her prosecution has received by DOJ to ensure its survival.  This evidence, at the very least, merits discovery into the Government's vindictive and selective prosecution.

---

requested such discovery in a five-page letter to the government, dated October 27, 2025.  Defense counsel requested, among other items, "all exculpatory material—including impeachment material—relevant to either guilt or punishment, pursuant to *Brady v. Maryland* and its analogs" and specifically requested, "[a]ny documents, communications, or information related to the decision or recommendation by any current or former prosecutors in the USAO for the Eastern District of Virginia *not* to charge or prosecute Attorney General James or stating why any prosecution would not be supported by the evidence nor likely to result in a conviction from January 2025 to the present, including, but not limited to, any notes, non-prosecution or declination memoranda, and any other memoranda written by such government personnel concerning Attorney General James." Ex. H at 3.

## CONCLUSION

"The judiciary has always borne the basic responsibility for protecting individuals against unconstitutional invasions of their rights by all branches of the Government." *Stamler v. Willis*, 415 F.2d 1365, 1369 (7th Cir. 1969). AG James asks that the Court do so here. For these reasons, AG James respectfully requests that the Court issue an order dismissing the indictment with prejudice for vindictive and selective prosecution, or, in the alternative, issue an order granting discovery concerning the Government's vindictive and selective prosecution, and an evidentiary hearing regarding the same.[69]

Dated: November 7, 2025

Respectfully submitted,

/s/ Abbe David Lowell
Abbe David Lowell (*admitted pro hac vice*)
David A. Kolansky (*admitted pro hac vice*)
Isabella M. Oishi (*admitted pro hac vice*)
John P. Bolen (*admitted pro hac vice*)
Schuyler J. Standley (*admitted pro hac vice*)
LOWELL & ASSOCIATES, PLLC
1250 H Street NW, Suite 250
Washington, DC 20005
Tel: 202-964-6110
Fax: 202-964-6116
ALowellpublicoutreach@lowellandassociates.com
DKolansky@lowellandassociates.com
IOishi@lowellandassociates.com

*Attorneys for Letitia A. James*

/s/ Andrew Bosse
Andrew Bosse (VSB No. 98616)
BAUGHMAN KROUP BOSSE PLLC
500 E. Main Street, Suite 1400
Norfolk, VA 23510
Tel: (757) 916-5771
ABosse@bkbfirm.com

---

[69] The accompanying Proposed Order refers only to dismissal of the indictment for Vindictive and Selective Prosecution. However, should the Court find AG James has met her burden to justify discovery and an evidentiary hearing related to prosecutorial vindictiveness in this case, we respectfully seek an Order from this Court tailored to such relief.