# Exhibit H



Lowell & Associates, PLLC
1250 H Street NW, Suite 250
Washington, DC 20005
Tel: (202) 964-6110
Fax: (202) 964-6116

**Abbe David Lowell**
*Founding Member*
ALowellPublicOutreach@lowellandassociates.com

October 27, 2025

**VIA E-MAIL**

Roger Keller, Esq.
Assistant United States Attorney
United States Attorney's Office
Eastern District of Virginia, Norfolk Division
Norfolk, VA 23510

Re:    *United States v. Letitia James,* Case No. 2:25-cr-122-JKW-DEM

Dear Mr. Keller:

On behalf of our client, we hereby make the following requests to be thorough and to effectuate the full requirements of Rule 16 of the Federal Rules of Criminal Procedure, Rule 404(b) of the Federal Rules of Evidence, the applicable rules of prosecutorial ethics, the Fifth and Sixth Amendments to the United States Constitution, and the Supreme Court's rulings in *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny, including *United States v. Agurs*, 427 U.S. 97 (1976), and *Giglio v. United States*, 405 U.S. 150 (1972).   We can also discuss our requests during our upcoming call.

The documents and information that we request include not only documents and information in the possession, custody, or control of your office, or otherwise available to your office, but also documents and information in the possession, custody, or control of any federal, state, territorial, or local agency allied with the prosecution (including, without limitation, the Department of Justice ("DOJ"); the Federal Bureau of Investigation ("FBI"); and the Internal Revenue Service – Criminal Investigation ("IRS-CI")) (collectively, the "Government Agencies"). *See, e.g.*, *United States v. Parker*, 790 F.3d 550, 558 (4th Cir. 2015); *Monroe v. Angelone*, 323 F.3d 286, 299 (4th Cir. 2003); *United States v. Auten*, 632 F.2d 478, 481 (5th Cir. 1980); *United States v. Deutsch*, 475 F.2d 55, 57 (5th Cir. 1973), *overruled on other grounds by United States v. Henry*, 749 F.2d 203 (5th Cir. 1984); *United States v. Perdomo*, 929 F.2d 967, 970-71 (3d Cir. 1991); *United States v. Bryan*, 868 F.2d 1032, 1036 (9th Cir. 1989); *United States v. Bryant*, 439 F.2d 642, 650 (D.C. Cir. 1971), *overruled on other grounds by Arizona v. Youngblood*, 488 U.S. 51 (1988).   In addition, given the nature of the investigation and charges (and the criminal referral that triggered it), we ask that you seek documents from all other departments and agencies that might possess them, including the Federal Housing Finance Agency (FHFA), the Department of Housing and Urban Development (HUD), and the Treasury Department.



I.    **Indictment Particulars**

Defense counsel requests more particular information about the allegations in the Indictment as follows. (In some cases, we are asking to be sure that no variances occur from the charges presented to the grand jury.):

A.    In paragraph 6, identify the individual(s) at OVM Financial who were involved in or assisted with the mortgage loan referred to in the Indictment (Loan # ██████████ ).

B.    In paragraph 7, identify the specific documents or information that indicate that "the Peronne Property was not occupied or used by JAMES as a secondary residence and was instead used as a rental investment property[.]"

C.    In paragraph 8, identify the documents that support that the application "avoid[ed] a 0.815% higher comparable investment property rate of 3.815%."

D.    In paragraph 8, identify any documents or information that demonstrate how the government calculated the "total ill-gotten gains of approximately $18,933 over the life of the loan."

E.    In paragraph 9, identify any documents that relate to "JAMES' Universal Property application for homeowners' insurance[.]"

F.    In paragraph 10, identify the relevant tax year(s) for the cited "Schedule E tax form(s)."

G.    In paragraph 10, identify the specific dollar amount "in rents received" for the Peronne Property and the relevant tax form(s) on which those rents are reported.

H.    In paragraph 10, identify the specific "deductions for expenses relating to the property."

I.    In paragraph 11, identify the individual(s) at First Savings Bank who were involved in acquiring or analyzing the mortgage loan referred to in the Indictment (Loan # ██████████ ).

J.    In paragraphs 14 and 17, identify each act, relevant to paragraphs 14 and 17, that occurred "in the Eastern District of Virginia," including: (i) The nature and type of the act; (ii) the date of the act; (iii) the time of the act; (iv) the city, state, and address where the act occurred; (v) all communications, exchanges, emails, text messages, and agreements related to the act; (vi) all other individuals involved in the act; (vii) the nature and extent of other individuals' involvement in the act; and (viii) all records, documents, materials, and things related to the act.

K.    In paragraphs 14 and 17, define "elsewhere", and for each act relevant to paragraphs 14 and 17, that occurred "elsewhere," identify: (i) The nature and type of the act; (ii) the date of the act; (iii) the time of the act; (iv) the city, state, and address where the act occurred; (v) all communications, exchanges, emails, text messages, and agreements related to the act; (vi) all other individuals involved in the act; (vii) the nature and extent of other individuals' involvement in the act; and (viii) all records, documents, materials, and things related to the act.



## II.      Rule 16 Discovery

Defense counsel requests the ongoing production of all materials subject to disclosure under Rule 16(a)(1)(A), (B), and (D).  In addition, pursuant to Rule 16(a)(1), defense counsel specifically requests the production of all statements (oral, written and/or recorded) made by Attorney General James.

## III.      Specific Requests Under *Brady*, *Agurs*, *Giglio*, and the Fifth Amendment

As ordered by Judge Walker during the proceedings held on October 24, 2025, defense counsel requests any and all exculpatory material—including impeachment material—relevant to either guilt or punishment, pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963) and its analogs.  For purposes of this request, "all exculpatory or impeaching material" includes, but is not limited to, any information indicating or tending to indicate that any of the allegations contained in the Indictment are not true, that government witnesses are not credible, or that Attorney General James did not have the intent alleged in the charges.

As noted above, this request is not limited to documents and information in the possession, custody, or control of your office, or otherwise available to your office, but also documents and information in the possession, custody, or control of any member of the Government Agencies and relevant governmental Departments or agencies.

This request includes, but is not limited to, the following:

A. Any documents, communications, or information related to the decision or recommendation by any current or former prosecutors in the USAO for the Eastern District of Virginia *not* to charge or prosecute Attorney General James or stating why any prosecution would not be supported by the evidence nor likely to result in a conviction from January 2025 to the present, including, but not limited to, any notes, non-prosecution or declination memoranda, and any other memoranda written by such government personnel concerning Attorney General James, as well as any underlying documents held by OVM Financial, First Savings Bank, Attorney General James, or her tax preparer/accountant that were referred to or attached to such memoranda.

B. Any statements (whether in notes, interview memoranda, or grand jury testimony) by any OVM Financial employee, First Savings Bank employee, Attorney General James' accountant, any family member of Attorney General James, or any other person indicating that, from August 2020 to the present:

   a. Attorney General James did not purchase the Peronne Property with any intent to rent it for any money;
   b. Renting the Peronne Property is not prohibited by the mortgage loan's Second Home Rider;
   c. Attorney General James accessed, used, or at all times maintained control over the Peronne Property;
   d. A rental agreement existed for the Peronne Property;
   e. Any rent was charged by or paid to Attorney General James; and
   f. Attorney General James was provided with advice to classify the property as she did in any loan application or tax filing.

L&A

C.      Any documents or information describing or reflecting any violation of law, rules, or policy by anyone associated with or involved in the investigation of this matter with respect to their activities in the investigation of this case.

D.      Any documents or information describing or reflecting prior criminal convictions, guilty verdicts, or juvenile adjudications (including but not limited to any relevant "rap sheets") of any witness the government intends to call at trial.

E.      Any documents or information describing or reflecting any consideration or promise given by any law enforcement official, prosecutor, or government agent during the course of the investigation of the above-referenced case to any witness the government intends to call at trial. Such "consideration" or "promise" includes, but is not limited to, anything that could be of value to the witness, such as favorable treatment or assistance in another criminal matter, immunity, letters of support for the witness, or anything else that would provide the witness with an incentive or motive to provide testimony against the defendant at trial.

F.      Any documents or information not requested above that describe or reflect the motivation of any witness to cooperate with the United States.

G.      Any documents or information not requested above that describe or reflect the competency or credibility of any witness the government intends to call at trial.

H.      Any documents or information not requested above that describe or reflect any bias or hostility against defendant of any witness the government intends to call at trial.

## IV.    **Rule 26/Jencks Act Material**

For some time, in cases where there is no legitimate concern for flight or witness tampering and in the spirit of full compliance with *Brady* and its progeny, the Department of Justice has provided witness interview memoranda and grand jury testimony as part of initial discovery (outside of such testimony that also will include *Brady* material). We request this material in this phase of discovery.

## V.    **Other Crimes Evidence**

Pursuant to the Fifth and Sixth Amendments and Federal Rule of Evidence 404(b), defendant requests that the prosecution disclose all evidence of any similar crimes, wrongs, or acts allegedly committed by Attorney General James, upon which the prosecution intends to rely to prove motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

## VI.    **Investigative Witness Statements**

With respect to those individuals interviewed by the government as part of its investigation in this matter, defendant specifically requests:

A.      Any draft FBI-302s, FD-1023s or interview memoranda describing such interviews.

L&A

B.  Any requests by investigating agents or members of the Department of Justice to edit, revise, or otherwise change the content of any 302 or interview memorandum.

## VII.  **Grand Jury**

Given that the indictment was returned by a grand jury sitting in Alexandria, Virginia for prosecution in the Norfolk Division, and that testimony may have been read or duplicated in two different grand juries, Attorney General James requests that the prosecution disclose for both grand juries:

A.  The empanelment date and place of each grand jury that heard evidence concerning this case.

B.  Any *voir dire* questions presented to potential grand jurors to determine any bias.

C.  The record of any grand jurors who were summoned but excused from service.

D.  The dates on which each such grand jury sat, the number of grand jurors present on those dates, and the dates on which each grand juror was in attendance.

E.  The identities of all persons to whom grand jury materials were disclosed.

F.  Whether anyone was present during grand jury proceedings other than the grand jurors, witnesses, court reporter, and the prosecutors, and, if so, the identities of all such persons.

G.  Any motion made to the Court to release grand jury transcripts from the Norfolk, VA grand jury to read or use in the Alexandria, VA grand jury.

H.  Whether any other government attorney made a presentation to the Alexandria grand jury that voted on the indictment of Attorney General James on October 9, 2025.

I.  The instructions provided to the Alexandria, VA grand jury before the indictment was returned and the instructions provided to the Norfolk, VA grand jury.

J.  The voting record and record of return of the indictment in open court.

*     *     *

Defense counsel would appreciate your response to these requests as soon as possible given the current schedule for filing pretrial motions. *See* Minute Entry & Text Order entered on Oct. 24, 2025. As the Court indicated at the initial appearance, "exculpatory evidence in a timely manner" should be prioritized for disclosure. *See* D.E. 25, R. 5(f) Order. We will supplement these requests as we continue our preparation for trial. If you have any questions regarding these requests, please contact me.

Thank you for your consideration.

L&A

October 27, 2025<br>Page 6

Sincerely,

Abbe David Lowell
*Counsel for Letitia A. James*


cc:    Andrew Bosse, Esq.